IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIE FIELDS, et al.            :

    v.                           :   Civil Action No. DKC 11-1000

FORREST WALPOLE, ESQ., et al.    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this mortgage fraud case is a motion to dismiss filed by Defendant Forrest Walpole, Esq. (ECF No. 11). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted in part and denied in part.

**I. Background**

    **A. Factual Background**

The following facts are set forth in the complaint. Plaintiffs Willie Fields, Marcia Fields, Melvin Hamilton, and Renee Hamilton are citizens of Maryland and are representative of a class of individuals impacted by an alleged "ponzi scheme" implemented by Defendants. (ECF No. 2 ¶¶ 8-9). Defendant Forrest Walpole operates a law practice in Virginia, was a minority owner of Defendant Maximum Impact Title ("Maximum"), and was "the attorney who conducted the refinance that helped fund the equity stripping 'ponzi' scheme." (ECF No. 2 ¶ 10).

Defendants Maximum Impact Title and Maximum Impact Financial Services were business entities created for "the sole purpose of continuing the improper transactions at issue in this case." (*Id.* ¶ 6).

According to Plaintiffs, the ponzi scheme worked as follows. Individuals such as Plaintiffs would refinance their homes and give the cash out proceeds from refinancing to Linda Sadr,[1] an owner of Defendant Maximum Impact Title, the title company named in the refinancings. Sadr promised to place the funds in escrow and pay off each mortgage for eighteen months, after which the mortgages would be paid in full. (*Id.* ¶ 4). During this period, Sadr would file a strategic lawsuit challenging a "'loophole' that mortgage companies used to 'get paid twice'" and ultimately have the court set aside Plaintiffs' mortgages. (*Id.* ¶ 3).

In the summer of 2006, Sadr gave a presentation at Redeeming Life Ministries, International, a church in White Plains, Maryland. At the presentation, Sadr described a "mortgage payoff program" and a member of the church testified

---

[1] Linda Sadr pled guilty in the U.S. District Court for the Eastern District of Virginia to two counts of mail fraud, four counts of wire fraud, and two counts of money laundering in connection with the "ponzi scheme" that is the focus of the current action. She was sentenced to twelve years in custody of the United States Bureau of Prisons and ordered to pay $9,685,790.48 in restitution. Judgment for Linda Lea Sadr, *United States v. Sadr*, No. 10-437-A (E.D.Va. June 20, 2011).

2

that the member "realized an accelerated payoff of her mortgage by using Sadr's mortgage payoff program." (*Id.* ¶ 22). Sadr also presented a seminar some months later at a library in Washington, D.C. on how to participate in her program. (*Id.* ¶ 23).

After learning of the payoff program, Plaintiffs began the process of refinancing their homes by submitting paperwork, ordering an appraisal of the property, and completing a loan application. (*Id.* ¶¶ 24-25). Plaintiffs and Sadr then attended a refinance settlement at Walpole's Alexandria, Virginia office, where Walpole "conducted the settlement, arranged the paperwork, signed the documents, disbursed the checks and generally oversaw the refinancing." (*Id.* ¶¶ 26, 29). According to Plaintiffs, Walpole "served as the fiduciary agent" for transactions at the settlement. (*Id.* ¶ 33).

Plaintiffs suggest that Walpole did not disclose important information to Plaintiffs at any time prior to or at the settlement and that the settlement was defective. First, Walpole did not disclose his or Sadr's ownership interests in the title company, Maximum. (*Id.* ¶ 27). Second, Walpole did not disclose the broker's finder's fees charged to Plaintiffs prior to or at the settlement. (*Id.* ¶ 28). Third, Plaintiffs allege that the deed of trust executed at each settlement and the associated affidavit of consideration were defective because

they were not notarized and the agent of the party secured by the deed of trust never made an oath that the recited consideration in the deed of trust was true and bona fide. (*Id.* ¶ 34).

At the conclusion of the settlement, proceeds from the cash out refinance were disbursed or enabled to be disbursed by Walpole. According to Plaintiffs, the funds were used to pay: Walpole directly, refinancing fees, various "shell entities" in an amount equivalent to eighteen mortgage payments to be held in "a false escrow," Defendant Maximum Impact Financial Services, LLC, and cash amounts to Sadr, Walpole, or both. (*Id.* ¶ 31). The Fields refinance resulted in a net cash out of at least $97,000 and the Fields received approximately $5,000. The Hamilton refinance resulted in a cash out of $135,000, of which the Hamiltons received only $300. (*Id.* ¶ 32).

After the refinance, Sadr made "payments on the mortgages for many months." (*Id.* ¶ 32). Indeed, several initial members of the scheme had their mortgages paid off in full as Sadr promised. (*Id.* ¶ 4). At some point after the refinancing, however, Sadr stopped paying Plaintiffs' mortgages. Plaintiffs began receiving notices of foreclosure on their respective properties for failure to pay the mortgage in March 2008. Plaintiffs contacted Sadr and others involved in the scheme, who advised that "foreclosure was part of the process" and

4

encouraged Plaintiffs to file lawsuits to "prevent the foreclosures and effectuate the payoff of their mortgages." (*Id.* ¶¶ 37, 38). Plaintiffs were provided with the legal documents necessary to file the lawsuits and assured that the payoff program was working as intended. (*Id.* ¶ 39).

Around the same time, Plaintiffs received an email advising that a meeting would be conducted in Dulles, VA "to provide an update on the program's progress." More than 500 people, including Plaintiffs, were in attendance. (*Id.* ¶ 39). Many attendees were told that their mortgages would be paid off in groups. (*Id.* ¶ 40).

Although Sadr "urged the Plaintiffs to continue to try and negotiate new payment arrangements with the noteholder" in June 2008, many of the Plaintiffs sought legal advice and learned that the payment program would not pay off their mortgages. (*Id.* ¶¶ 41, 42). At or around February 2009, Plaintiffs' properties went into foreclosure. (*Id.* ¶ 43).

**B. Procedural Background**

Plaintiffs originally filed a class action suit in accordance with Maryland Rule 2-231 in the Circuit Court for Prince George's County alleging negligence, negligent misrepresentation, unjust enrichment, fraud, violation of the Maryland Finder's Fee Act, and violation of the Maryland Consumer Protection Act ("MCPA") against Defendants.

5

(ECF No. 2). The case was removed to this court on April 18, 2011, based on diversity jurisdiction. (ECF No. 1). Walpole filed a motion to dismiss all the counts against him on April 25, 2011. (ECF No. 11). In his reply to Plaintiffs' opposition to the instant motion to dismiss, Walpole raised several novel arguments as to why Plaintiffs' claims against him should be dismissed.[2] (ECF No. 16). Because these arguments are raised for the first time in Walpole's motion reply, the arguments will not be considered by the court at this time.

**II. Standard of Review**

Walpole moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d

---

[2] These arguments include, namely, that Plaintiffs failed to join a necessary party and that Plaintiffs failed to plead actual damages sufficient to sustain the claim that Walpole violated the Maryland Consumer Protection Act. (ECF No. 16, at 2-3, 18-19).

6

1130, 1134 (4th Cir. 1993)). In evaluating the complaint, the court need not accept unsupported legal allegations. *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

Generally, courts do not consider extrinsic evidence in a motion to dismiss pursuant to Rule 12(b)(6) because "the inquiry is limited to the complaint and the documents attached thereto or incorporated by reference." *Tech. Patents, LLC v. Deutsche Telekom AG*, 573 F.Supp.2d 903, 920 (D.Md. 2008). A court may, however, consider extrinsic evidence attached to the motion to dismiss if the evidence "was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

**III. Analysis**

Walpole seeks to dismiss the claims against him on the grounds that Plaintiffs have failed to plead adequately each cause of action. (ECF No. 11 ¶ 1). In response, Plaintiffs rely on *Hoffman v. Stamper*, 385 Md. 1 (2005), to illustrate that

7

their claims should not be dismissed. Plaintiffs contend that *Hoffman* is "instructive to the present litigation" and cite extensively from the opinion to argue that Walpole's culpability is analogous to that of the *Hoffman* defendants.[3]

## A. Negligence and Negligent Misrepresentation

Counts I and III allege negligence and negligent misrepresentation, respectively, against Walpole. Walpole argues that Plaintiffs' claims fail because Plaintiffs cannot establish that Walpole owed a duty of care to Plaintiffs.

A plaintiff stating a claim for negligence or negligent misrepresentation against an attorney must first allege a duty of care between the attorney and the plaintiff. *Noble v. Bruce*, 349 Md. 730, 747 (1998) (noting that the Court of Appeals of Maryland stated that "the attorney must owe a duty to the nonclient in order for the nonclient to recover under" a negligence or negligent misrepresentation theory). In Maryland,

---

[3] *Hoffman* involved a "flipping scheme" in which members of the scheme bought dilapidated houses in Baltimore City, sold the homes at grossly inflated prices to low income buyers, and prepared inflated appraisals of the homes to assist the buyers in obtaining loans to finance the purchase. *See* 385 Md. 1 (2005). *Hoffman*, however, is not so analogous to the instant case that it dictates the outcome Plaintiffs seek. The defendants in *Hoffman* were the flippers, the lenders, and an appraiser, and each was integral to the scheme. None of those defendants played a role at all similar to that of Walpole. Further, Plaintiffs fail to argue with any specificity as to how *Hoffman* dictates that the claims against Walpole should not be dismissed.

an attorney "only owes a duty to his clients [.]" *Schatz v. Rosenberg*, 943 F.2d 485, 492 (4th Cir. 1991), *cert. denied*, 503 U.S. 936 (1992). Thus, a plaintiff must, as part of a claim, allege the existence of "an employment relationship" with the attorney. *Wong v. Aragona*, 815 F.Supp. 889, 896 (D.Md. 1993) (quoting *Flaherty v. Weinberg*, 303 Md. 116, 134 (1985)), *aff'd*, 61 F.3d 902 (4th Cir. 1995).

The sole exception to the strict requirement of privity in Maryland attorney malpractice actions arises when the nonclient is an intended third party beneficiary. *Flaherty*, 303 Md. at 130. To prevail on a third party beneficiary theory, the nonclient "must allege and prove that the intent of the client to benefit the nonclient was a direct purpose of the transaction or relationship." *Id.* at 130-31. "[T]he test for third party recovery is whether the intent to benefit actually existed, not whether there could have been an intent to benefit the third party." *Id.* at 131. In *Flaherty*, the court found that the nonclient plaintiffs sufficiently alleged a claim of negligence against a mortgage settlement attorney because the plaintiffs specifically asserted that the attorney's relationship with the client was either expressly or impliedly intended to benefit the plaintiffs. *Id.* at 138-39.

Plaintiffs' negligence and negligent misrepresentation claims fail because Plaintiffs have not alleged that they were

9

in privity with Walpole or that his attorney-client relationship with Maximum Impact Title was intended to confer a benefit on Plaintiffs. Plaintiffs do not allege that Walpole was their attorney, nor do they allege that they were intended beneficiaries of Walpole's relationship with his client. Plaintiffs' mere recitations that Defendants owed a duty of care to Plaintiffs are insufficient to survive a motion to dismiss. (ECF No. 2 ¶¶ 45, 61). Thus, Counts I and III must be dismissed.

**B. Unjust Enrichment**

Count II alleges unjust enrichment. Walpole argues that Plaintiffs "make mere conclusory statements" and thus fail to allege sufficiently that Walpole was unjustly enriched.

In Maryland, unjust enrichment consists of three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value. *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007). "A successful unjust enrichment claim serves to 'deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance,

and even though the plaintiff may have suffered no demonstrable losses.'"  *Id.* at 295-96 (quoting *Dep't of Hous. & Cmty. Dev. v. Mullen*, 165 Md.App. 624, 659 (2005), *cert. denied*, 391 Md. 579 (2006)).

Here, the unjust enrichment Walpole allegedly incurred was a portion of the proceeds from Plaintiffs' fraudulently induced cash out refinancings, including "amounts paid directly to Walpole" and "large cash amounts to either Sadr and/or Walpole." (ECF No. 2 ¶ 31).  Although Plaintiffs will need to prove these benefits at a later stage of litigation to succeed under their claim, Plaintiffs' initial allegations are sufficient to satisfy the first element of unjust enrichment.

Walpole contends that Plaintiffs have also failed to allege the second element of unjust enrichment, that is, Walpole's knowledge and acceptance of the benefit.  In Maryland, "[t]he essence of the requirement that the defendant have knowledge or appreciation of the benefit is that the defendant have an opportunity to decline the benefit."  *Hill*, 402 Md. at 299.  Because Walpole was responsible for the disbursement of funds from the refinancing, it is reasonable to infer that he had the requisite knowledge of the benefit received by him and had an opportunity to decline such benefit.

The third element of unjust enrichment is "a fact specific balancing of the equities."  *Id.* at 301.  Plaintiffs allege that

11

Walpole conducted the refinancing that funded the equity stripping scheme, did not properly disclose his ownership interest in Maximum or the broker's finder's fees charged, and executed defective Deeds of Trusts and affidavits of consideration at the settlement. (ECF No. 2 ¶¶ 26-28, 34). Further, Plaintiffs were unaware of the improper nature of the transactions from the scheme for years. (*Id.* ¶ 36). Construing the allegations in a light most favorable to Plaintiffs, Walpole's retention of the benefit received in association with the equity stripping scheme is, on its face, sufficiently inequitable to survive a motion to dismiss.

   **C. Fraud**

Count IV of the complaint alleges fraud. Walpole argues that Plaintiffs fail to state a claim for fraud as a matter of law because they fail "to allege even a single statement of fact in support of their claim." (ECF No. 11-1 at 8). Further, Walpole argues that Plaintiffs fail to plead with the requisite specificity required by Fed.R.Civ.P. 9(b). (*Id.*).

The elements of fraud in Maryland are: "(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on

12

the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Md. Envtl. Trust v. Gaynor*, 370 Md. 89, 97 (2002). Absent a duty to disclose, active concealment of a material fact, "characterized by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter," may also constitute common law fraud because concealment is analogous to intentional misrepresentation. *United States v. Colton*, 231 F.3d 890, 899 (4th Cir. 2000). When a plaintiff alleges fraud with regard to mere non-disclosure of a material fact, however, he or she must first establish that the defendant owed a duty of care to the plaintiff. *See id.* at 899 ("silence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud").

Claims of fraud are subject to a heightened pleading standard under Fed.R.Civ.P. 9(b). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999). Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The word "circumstances" "is interpreted to include the 'time, place and contents of the false representation, as well as the identity of

the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298, 313-14 (D.Md. 2000)(quoting *Windsor Assocs. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)). The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim, protect the defendant against frivolous suits, eliminate fraud actions where all of the facts are learned only after discovery, and safeguard the defendant's reputation. *Harrison*, 176 F.3d at 784. In keeping with these objectives, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Id.*

Here, Plaintiffs fail to allege that Walpole made any false representation that induced the Plaintiffs to enter into the scheme and thus fail to state a claim for affirmative fraud. In *Asafo-Adjei v. First Savings Mortg. Corp.*, 2011 WL 344613 (D.Md. Feb. 1, 2010) (slip copy), the plaintiffs alleged fraud against the settlement attorney after the plaintiffs learned that the land they "purchased" did not exist. *Id.* at *2. The fraud allegations against the settlement attorney were dismissed for failing to allege that the attorney made any statement to the

plaintiffs, much less that the statement was false and intended to induce the plaintiffs into entering into a fraudulent transaction. *Id.* at \*4. Similarly, the instant complaint does not allege any fraudulent statement made by Walpole to the Plaintiffs. Further, Plaintiffs do not allege that Walpole actively concealed any material fact in order to induce Plaintiffs to refinance their properties.

Plaintiffs do, however, allege that Walpole failed to disclose his or Sadr's ownership interests in the title company and the broker's finder's fees charged to the Plaintiffs. (ECF No. 2 ¶¶ 27-28). To allege fraud arising from non-disclosure however, a plaintiff must allege a duty to disclose between the defendant and the plaintiff. Here, Plaintiffs assert that "Walpole served as the fiduciary agent for these transactions," but do not allege that Walpole was their fiduciary agent. (*Id.* ¶ 33). Merely stating that Walpole was "the fiduciary agent" does not sufficiently show he was under any duty to disclose the alleged material facts to Plaintiffs. As Plaintiff's fraud claims fail to establish even the basic elements of fraud, the heightened pleading standard required by Fed.R.Civ.P. 9(b) need not be addressed. Thus, Count IV must be dismissed.

**D.   Violation of Maryland Finder's Fee Act**

Count V of the complaint alleges a violation of the Maryland Finder's Fee Act, Md. Code. Ann., Com. Law §§ 12-801 *et seq.* (West 2011) ("Finder's Fee Act").  According to Plaintiffs, Walpole violated the Finder's Fee Act because he did not "disclose in a separate document the finder's fees charged as part of the refinance and/or any relationship between the broker and the lender[.]"  (ECF No. 2 ¶ 76).  Walpole argues that the Finder's Fee Act is inapplicable to the instant case because he is not a mortgage broker as defined by the act.

"The Maryland Finder's Fee Law is very narrow in its scope: it applies only to mortgage brokers and the fees they charge borrowers."  *Sweeney v. Savings First Mortg., LLC*, 388 Md. 319, 340 (2005).  Under the act, a mortgage broker is a person who, for a fee or other valuable consideration assists a borrower in obtaining a mortgage loan and is not named as a lender in the transaction.  Md. Code Ann., Com. Law § 12-801(f)(2011).

Here, Plaintiffs do not allege that Walpole acted as their mortgage broker.  Nor do Plaintiffs allege that Walpole assisted them in obtaining the mortgage loan.  In fact, Plaintiffs do not allege meeting Walpole until the refinancing settlement, after they began the refinancing process and completed a loan application.  (ECF No. 2 ¶¶ 24-25).  Because the Plaintiffs do not sufficiently allege facts supporting an inference that

Walpole acted as their mortgage broker, the Finder's Fee Act is inapplicable as to him. Count V must be dismissed.

**E. Violation of Maryland Consumer Protection Act**

Count VI[4] of the complaint alleges a violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101 *et seq.* (2011)("MCPA"). "The [MCPA], codified at Maryland Code (1975, 2005 Replacement Volume) §§ 13-101 *et seq.* of the Commercial Law Article was intended to provide minimum standards for the protection of consumers in [Maryland]." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 140 (2007). In this case, Plaintiffs allege that Walpole violated the MCPA through false representations and omissions relating to the validity of the mortgage payoff program and their refinancings. (ECF No. 2 ¶ 49). In his motion to dismiss, Walpole incorrectly argues only that the MPCA is not applicable to mortgages. (ECF No. 11-1 at 7-8).

The MCPA proscribes, *inter alia*, deceptive and unfair trade practices in the "sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services" and the "extension of consumer credit." Md. Code Ann., Com. Law § 13-303 (2011). The MCPA specifically defines a mortgage as a

---

[4] The complaint labels violation of the Maryland Consumer Protection Act as a duplicate "Count I." This memorandum opinion refers to the count to as Count VI and the subsequent counts are referred to as labeled in the complaint.

17

"mortgage, deed of trust, security agreement, or other lien on 1 to 4 family residential real estate" and sets forth various requirements imposed on mortgage servicers. *Id.* § 13-316. Maryland courts have also consistently recognized that the MCPA may be applied to transactions involving mortgages. *See Bednar v. Provident Bank of Md.*, 402 Md. 532 (2007) (affirming lower court's application of the MCPA to fees charged in conjunction with a second mortgage); *Miller v. Pacific Shore Funding*, 224 F.Supp.2d 977, 988 (D.Md. 2002) (analyzing whether non disclosure regarding a secondary mortgage was suppression of a material fact as proscribed by the MCPA). Thus, it is clear that the MCPA does apply to deceptive and unfair trade practices regarding mortgages and Count VI will not be dismissed at this time.

**IV. Conclusion**

For the foregoing reasons, the court will grant in part and deny in part Defendant Walpole's motion to dismiss. (ECF No. 11). A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
