IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                        |   |                                  |
|------------------------|---|----------------------------------|
| WILLIE FIELDS, et al.  | : |                                  |
|                        | : |                                  |
| v.                     | : | Civil Action No. DKC 11-1000     |
|                        | : |                                  |
| FORREST WALPOLE, et al.| : |                                  |
|                        | : |                                  |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this diversity case is the motion for leave to file amended complaint filed by Plaintiffs. (ECF No. 30). The issues have been fully briefed, and the court now rules, no hearing deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted in part and denied in part.

**I.   Background**

The facts of this case as alleged by Plaintiffs were described in full in a prior opinion, *see Fields v. Walpole*, No. DKC 11-1000, 2011 WL 2669401 (D.Md. July 6, 2011), so only a brief summary will be set forth here.

**A.   Factual Background**

Plaintiffs Willie Fields, Marcia Fields, Melvin Hamilton, and Renee Hamilton alleged that Defendants Forrest Walpole, Maximum Impact Title ("MIT"), and Maximum Impact Financial Services, LLC ("MIFS") engaged in a Ponzi scheme to defraud them. The Ponzi scheme worked as follows. Individuals like

Plaintiffs would refinance their homes and give the cash-out proceeds from refinancing to Linda Sadr, an owner of MIT, which was the title company named in the refinancings.   Sadr promised to place the funds in escrow and pay off each mortgage for eighteen months.   During this period, Sadr would file a strategic lawsuit challenging a loophole favoring mortgage companies.   This lawsuit was intended to have the court ultimately set aside Plaintiffs' mortgages as paid in full.

In 2006, Sadr gave presentations to the public describing this "mortgage payoff program."   (ECF No. 2 ¶ 22).   Plaintiffs subsequently participated in the payoff program.   Walpole, a lawyer and minority owner of MIT, conducted the refinance settlement transactions for the program.   At the conclusion of the settlements, proceeds from the cash-out refinance were disbursed or enabled to be disbursed by Walpole.   The funds were allegedly used to pay:   Walpole directly, refinancing fees, various "shell entities" in an amount equivalent to eighteen mortgage payments to be held in "a false escrow," MIFS, and cash amounts to Sadr, Walpole, or both.   (*Id.* ¶ 31).   The Fields refinance resulted in a net cash-out of at least $97,000, of which the Fields received approximately $5,000.   The Hamilton refinance resulted in a cash-out of $135,000, of which the Hamiltons received only $300.

Although some initial members of the Ponzi scheme had their mortgages paid off in full as promised, Sadr stopped paying Plaintiffs' mortgages at some point after the refinancing. In March 2008, Plaintiffs began receiving notices of foreclosure on their respective properties for failure to pay their mortgages. When Plaintiffs contacted Sadr and others involved in the Ponzi scheme, they were advised that "foreclosure was part of the process" and were encouraged to file lawsuits to "prevent the foreclosures and effectuate the payoff of their mortgages." (*Id.* ¶¶ 37, 38). Plaintiffs were assured that the payoff program was working as intended. In June 2008, Sadr "urged the Plaintiffs to continue to try and negotiate new payment arrangements with the noteholder." (*Id.* ¶ 41). After this notice, many of the Plaintiffs sought legal advice and learned that the payment program would not pay off their mortgages. Around February 2009, Plaintiffs' properties went into foreclosure.

### B.   Procedural Background

Plaintiffs brought suit as a class action initially in the Circuit Court for Prince George's County, Maryland. On March 12, 2011, Plaintiffs served the summons and complaint on Walpole, and on April 7, 2011, they served the remaining Defendants. On April 18, the case was removed to this court on the basis of diversity of citizenship. (ECF No. 1). The

3

complaint contains six counts:  negligence; violation of the Maryland Consumer Protection Act ("MCPA"); unjust enrichment; negligent misrepresentation; fraud; and violation of the Maryland Finder's Fee Act.  (ECF No. 2).  When MIT and MIFS failed to respond within the requisite time period, Plaintiffs moved for entry of default.  (ECF Nos. 17, 18).  The clerk entered default against MIT and MIFS on June 28, 2011.  (ECF No. 19).

Separately, on April 25, 2011, Walpole moved to dismiss all counts against him for failure to state a claim.  (ECF No. 11). On July 6, 2011, in a memorandum opinion and order, this court dismissed four of the six counts against Walpole, leaving the unjust enrichment and MCPA claims.  (ECF Nos. 22, 23).  Walpole subsequently filed an answer on July 12, 2011.  (ECF No. 24).  A scheduling order was then entered, which set the deadline for the amendment of pleadings as August 29, 2011, and the deadline for the close of discovery as November 28, 2011.  (ECF No. 25). Two days later, the parties filed a joint motion to amend the scheduling order to push all deadlines back sixty days.  (ECF No. 26).  That motion was granted.

On October 28, 2011, Plaintiffs filed the pending motion for leave to file amended complaint.  (ECF No. 30).  Walpole opposed on November 11, 2011.  (ECF No. 31).  On November 28, 2011, Plaintiffs filed a reply.  (ECF No. 34).

## II.  Standard of Review

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint should be freely given "when justice so requires."  Thus, "leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile."  *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009).  An amendment is futile if it would fail to withstand a motion to dismiss.  *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

Consequently, leave to amend should be denied if the well-pleaded facts in the proposed new complaint do not amount to a "showing" that the plaintiff is entitled to relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (explaining that a "showing" is more than the "mere possibility of misconduct").  In the same way, if the amended pleading contains facts sufficient to rule on an affirmative defense, the court may consider that defense on a motion for leave to amend.  *See Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009) (explaining that a statute of limitations defense may sometimes be considered on a motion to dismiss).  For example, the United States Court of Appeals for the Fourth

5

Circuit has permitted dismissal on *res judicata* grounds in some circumstances:

> This Court has previously upheld the assertion of res judicata in a motion to dismiss. Although an affirmative defense such as res judicata may be raised under Rule 12(b)(6) "only if it clearly appears on the face of the complaint," when entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact.

*Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000) (citations omitted).

### III. Analysis

In seeking leave to file an amended complaint, Plaintiffs look to add Linda Sadr as a defendant and Carlton Powell and Paula Mascendaro as plaintiffs.  To begin, Walpole does not object to the addition of Sadr as a party.  Accordingly, Plaintiffs will be permitted to add her as a defendant to this action.

As to Powell, Walpole argues that he will be prejudiced by Powell's addition as a plaintiff because he will not have sufficient time within which to conduct meaningful discovery. In light of the modified scheduling order, Walpole's argument is a bit disingenuous.  The scheduling order originally set the deadline for the joinder of additional parties and the amendment of pleadings as August 29, 2011.  The parties then *jointly* moved

for *all* deadlines in the scheduling order to be pushed back sixty days. (ECF No. 26). Thus, Walpole consented to the deadline for the joinder of additional parties and the amendment of pleadings being moved to October 28, 2011, which was the date Plaintiffs filed their motion. Without a more compelling reason at this time, Walpole may not be excused from his lack of diligence in anticipating his discovery needs vis-à-vis the deadline for the amendment of pleadings and joinder of parties. Leave to add Powell as a plaintiff will be granted. If the addition of this new plaintiff prompts Walpole to require a further extension of the discovery period, he may file a motion to that effect.

As to Mascendaro, Walpole makes the same argument regarding prejudice. He also argues, however, that the addition of Mascendaro as a plaintiff would be futile because her claims would be foreclosed by the statute of limitations. The addition of Mascendaro would indeed be futile, but for a more straightforward reason than what Walpole advances.

Walpole points out that Mascendaro "brought a case in Maryland District Court in October, 2009 against Linda Sadr . . . based upon the very same transaction and occurrence alleged in the present Complaint." (ECF No. 31-1, at 3). This case was *Mascendaro v. Sadr*, No. 09-2787 (D.Md. filed Oct. 22, 2009). Mascendaro and her father, Samuel Merrill, brought suit in this

court against Sadr and various Doe Companies, alleging fraud, negligent misrepresentation, constructive fraud, breach of contract, conversion, and unjust enrichment. The nucleus of facts upon which Mascendaro maintained her causes of action was virtually identical to that alleged in this case. Significantly, Mascendaro obtained a default judgment against Sadr. Mascendaro's claims against Defendants in this case are therefore likely barred on the basis of *res judicata*.

For a prior judgment to bar an action on the basis of *res judicata*, the prior judgment must be final, on the merits, and rendered by a court of competent jurisdiction in accordance with due process; the parties in the two actions must be either identical or in privity; and the claim in the second action must be based upon the same cause of action involved in the earlier proceeding. *See Grausz v. Englander*, 321 F.3d 467, 472 (4th Cir. 2003). Here, all three requirements would be applicable to Mascendaro's claims against Defendants if she were to be added as a plaintiff. Amendment of the pleadings with regard to Mascendaro would thus be futile. Accordingly, plaintiffs motion is denied in this respect.

**IV.  Conclusion**

For the foregoing reasons, the motion for leave to file amended complaint filed by Plaintiffs will be granted in part and denied in part.  A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge