## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **WILLIE FIELDS, et al** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Case No.: 11-cv-01000 DKC** |
| **FORREST WALPOLE, ESQ., et al** | * | |
| **Defendants** | * | |

_____

### PLAINTIFFS' MOTION TO CERTIFY A CLASS AGAINST DEFENDANTS, APPOINT NAMED PLAINTIFFS AS CLASS REPRESENTATIVES AND APPOINT CLASS COUNSEL

Named Plaintiffs, by and through counsel, and pursuant to Federal Rule of Civil Procedure 23, requests that this Court certify a class against Defendants.  The proposed Class is defined as all individuals who had a residence refinanced by Maximum Impact Title, LLC, which transaction also involved Linda Sadr and Forrest Walpole, whereby:

(1)     the individual did not obtain the amount indicated as "proceeds to Borrower" on their HUD-1;

(2)     a portion of their proceeds were directed to Maximum Impact Title, LLC; and/or

(3)     a portion of their proceeds were directed to Maximum Impact Financial Services, LLC.

In support of this motion, Plaintiffs rely upon the pleadings in this case and their Memorandum in support of this motion, with Exhibits, which is incorporated herein.

Wherefore the Plaintiffs respectfully request (1) that this Court enter an Order that this motion is granted, and further, (2) that the proposed Class and Subclass are certified in this case, and further, (3) that the Named Plaintiffs' Motion to be named as Class Representatives be

granted, and further, (4) that the Motion to Appoint Class Counsel be granted, and further, for

such other and further relief as the nature of the case may require.

McCARTHY, WINKELMAN & MORROW, L.L.P.

By: _____

Michael J. Winkelman
One Town Center
4201 Northview Drive, Suite 410
Bowie, Maryland   20716
301-262-7422
301-262-0562 (fax)

The Law Offices of John Michael Harrison, LLC

By: _____

John Michael Harrison
4201 Northview Drive, Suite 405
Bowie, MD 20716
301-262-2353
888-461-2612 (fax)
jharrisonlaw@att.net

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 6th day of February, 2012 a copy of the foregoing was mailed, postage prepaid to:

**Aaron L. Handleman**
**Shannon L. Chaudhry**
**Eccleston & Wolf, P.C.**
**1629 K Street, N.W.**
**Suite 260**
**Washington, DC  20006**

**Maximum Impact Title**
**c/o Linda Lea Sadr, Resident Agent**
**FPC Alderson**
**Federal Prison Camp**
**Glen Ray Road Box A**
**Alderson, WV  24910**

**Maximum Impact Financial Services, LLC**
**c/o Linda Lea Sadr, Resident Agent**
**FPC Alderson**
**Federal Prison Camp**
**Glen Ray Road Box A**
**Alderson, WV  24910**

**Linda Lea Sadr**
**FPC Alderson**
**Federal Prison Camp**
**Glen Ray Road Box A**
**Alderson, WV  24910**

_____
Michael J. Winkelman

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **WILLIE FIELDS, et al** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Case No.: 11-cv-01000 DKC** |
| **FORREST WALPOLE, ESQ., et al** | * | |
| **Defendants** | * | |

_____

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION TO CERTIFY A CLASS AGAINST DEFENDANTS, APPOINT NAMED
PLAINTIFFS AS CLASS REPRESENTATIVES AND APPOINT CLASS COUNSEL**

Plaintiffs, on behalf of themselves and the proposed Class of persons similarly situated, submit this memorandum in support of their Motion to Certify a Class Against Defendants, Appoint Named Plaintiffs as Class Representatives and Appoint Class Counsel.

**I.      INTRODUCTION**

This case arises from a large scale ponzi scheme that involved homeowners in the Washington Metropolitan area.  The scheme involved enticing unsuspecting homeowners into a variety of "programs" which the homeowners were deceived into believing could result in the mortgage on their home being completely satisfied through non-traditional means.  Individuals would refinance their homes and direct the vast majority of the profits from the refinancing to the Defendants and/or entities controlled by the Defendants.

This deception was perpetrated at or near the height of the housing bubble in the Washington Metropolitan market.  Refinancing became a popular mechanism whereby individuals could have their home refinanced and withdraw substantial amounts of money based upon the new appraised value of their property.  Individuals who had lived in their home

for an extended period of time were particularly suited for this transaction as they would have in excess of $100,000 of equity in their current home.

The "mastermind" of the scheme at issue was Linda Sadr.  Ms. Sadr is currently serving a twelve year sentence after a criminal plea was entered in the United States District Court for the Eastern District of Virginia, case number 1:10-cr-437.  Ms. Sadr advised individuals she had found certain loopholes in the banking industry.  These loopholes, she alleged, allowed her to work the system such that an individual could pay their mortgage for eighteen months and then through certain legal and other processes, have the entire mortgage satisfied and the homeowner would have no further mortgage commitment.

To perpetrate the scheme, Ms. Sadr needed certain individuals and entities in place.  the first entity necessary to effectuate the transactions was a title company.  The title company which was created was called Maximum Impact Title, LLC.  Maximum Impact Title, LLC was created by Defendant Forrest Walpole in approximately April 2005.  It was formed as a Virginia Limited Liability Corporation.

Forrest Walpole is an attorney and has been licensed for 46 years.  He is currently licensed to practice law in the State of Virginia and has also held law licenses in the states of Illinois and Michigan.  Prior to forming Maximum Impact Title, LLC, Mr. Walpole had been of counsel for a real estate company and builders.  Mr. Walpole formed Maximum Impact Title and he and Ms. Sadr were initially 50/50 owners of the title company.

The title company was formed after Ms. Sadr approached Mr. Walpole and indicated she had an interest in having a settlement company organized so that she could direct settlements to the title company.  Mr. Walpole agreed to create the entity and further agreed to a

50/50 ownership interest in the company.

The final entity necessary to effectuate the transactions was Maximum Impact Financial Services, LLC.  Maximum Impact Financial Services, LLC was an entity wholly owned and operated by Linda Sadr.  The entity appears to have been a company used by Ms. Sadr to funnel money and to pay certain transactions associated with the scheme.  Funds from the refinance process were partially directed to Maximum Impact Financial Services, LLC, through direct wire transactions.

Maximum Impact Financial Services, LLC, was also responsible for paying Forrest Walpole a monthly salary of $10,000.  This began in approximately January of 2006 after Mr. Walpole and Ms. Sadr entered into an agreement whereby Mr. Walpole would surrender all but a 1% ownership interest in Maximum Impact Title, LLC.  In exchange for surrendering his equity interest in Maximum Impact Title, LLC, Mr. Walpole was paid a monthly amount by Maximum Impact Financial Services, LLC.  The monies deposited into Maximum Impact Financial Services, LLC, were the result of transactions at issue in this case.

Once the entities and players were in place, the Defendants began the process of effectuating their plan.  The plan was operated as a ponzi scheme and generally worked as follows.  An individual or individuals would be advised of the plan and enticed to enter the program[1].  There was an application process for the program and it was made to appear that entry into the program was only permitted for select individuals.  Once the initial persons were

---

[1]There were several different names for the "programs" used in the scheme.  They included a "mortgage elimination program", a "pay it forward program", a "10 in 1 out program" and an investment program.  Though the programs had different names, they worked in the same manner and the scheme was processed in the same way for all programs.

brought into the plan, Ms. Sadr would promise them that their mortgage would be paid in full within a limited period of time.  Ms. Sadr paid mortgages in full for a few people at the beginning.

These individuals were then enlisted to help recruit other persons into the program. These individuals who had their mortgages paid in full are referred to as "marks."  The marks would then target specific groups to engage their participation in the program.  The groups were relatively localized to an African American church in Southern Maryland and an Asian community in Northern Virginia.  The marks were enlisted to bring more persons into the program by being paid an illegal kickback.  The marks would be paid a percentage of each transaction of individuals they brought into the program.

Persons would apply for the program and then have their residence refinanced.  At the time of settlement, the proceeds of the refinance would be properly reflected on the HUD-1. The HUD-1 would contain all of the necessary information as to the amount of the fees and mortgage repayment information.  The HUD-1 would also reflect the amount to buyer which represented the surplus, after refinance, which was to be given to the borrower.

What was not reflected on the HUD-1 is that the vast majority of the proceeds from the refinance transaction were not distributed to the borrower.  Rather the proceeds from the refinance were directed to Maximum Impact Title (or another entity owned by Linda Sadr) and Maximum Impact Financial Services, LLC.  The lenders would have no knowledge of the disbursement of the funds to anyone other than the borrower as this was the information listed on the HUD-1.  No HUD-1 or other settlement document listed the transfer of the refinance proceeds to entities involved in the ponzi scheme.

The refinance settlement would generally take place as follows.  Individuals would report to Mr. Walpole's law office which also served as the headquarters for Maximum Impact Title, LLC.  Mr. Walpole would prepare all the documents for settlement and would make necessary arrangements with lenders prior to the settlement taking place.  Individuals would be brought into the conference room and Mr. Walpole would take the borrowers through the settlement process.  He would have them sign the necessary documents to complete the refinance procedure.

Once the refinance procedure had been completed, Mr. Walpole would leave the room.  The borrowers would then have a conversation with Ms. Sadr and Ms. Sadr would instruct the borrowers as to how the proceeds from the refinance were to be distributed.  Ms. Sadr would have the borrowers review and/or prepare documents instructing that the proceeds of the refinance be directed to Maximum Impact Financial Services and some other Linda Sadr controlled company.

Ms. Sadr would then leave the conference room and take these instructions to Mr. Walpole.  The instructions were generally wiring instructions directing Mr. Walpole to wire the proceeds of the transaction into the accounts of Maximum Impact Financial Services and the other entity.

Individuals were told that their mortgages would be paid for eighteen months.  At the end of the eighteen months, a legal process would begin wherein the individuals would challenge the lender's ability to collect their mortgage.  In most instances, the mortgage of the individuals was paid for a number of months after the refinance settlement.  However, as with all ponzi schemes, once the money became insufficient to fulfill the obligations the process

- 5 -

began to fail.

Individuals began receiving late mortgage and foreclosure notices from their lenders. They were then advised by Ms. Sadr to begin filing legal papers. Ms. Sadr and/or entities acting on behalf of Ms. Sadr would forward paperwork to the individuals to have alleged lawsuits filed in local courts. In many instances Ms. Sadr directly filed these bogus lawsuits. The lawsuits had no true legal effect and individuals' homes began going into foreclosure.

Individuals involved in the program became concerned with the foreclosure notices and the apparent issues with the legal process and began contacting Ms. Sadr in earnest. Ms. Sadr, both individually as well as through a series of entities, continued to defraud people and hide the true nature of the transactions. She held large group meetings, emailed mass excuses as to "delays in her program", blamed other entities and generally strung individuals along for several years.

Eventually the entire scheme failed and criminal proceedings were brought against Ms. Sadr. Ms. Sadr pled guilty to mail fraud, wire fraud and unlawful monetary transactions on January 6, 2011. The criminal pleadings set forth in great detail the nefarious nature of the scheme.

## II.     PROSPECTIVE CLASS DEFINED

Filings made in the criminal proceedings against Ms. Sadr indicate that an excess of 155 families were affected by Ms. Sadr. Other filings in Federal Court suggest this number is in excess of 200 families. Her scheme extended for more than four years and involved at least six different corporate entities created to continue the ponzi scheme. Federal filings also suggest Ms. Sadr funneled the money through at least twenty five different bank accounts and used a

variety of settlement companies to effectuate the scheme.

This proposed Class focuses on a limited subset of these transactions. Specifically this proposed Class only seeks to certify individuals who were affected by Ms. Sadr through her transactions with Maximum Impact Title, Maximum Impact Financial Services, LLC and Forrest Walpole.

The proposed class is primarily defined by a document produced through discovery on January 20, 2012. The document, attached as Exhibit 1, is a summary of all closing conducted by Forrest Walpole on behalf of Maximum Impact Title. This list likely encompasses the entirety of individuals who would be potential members of the proposed class - the total class size would be less than eighty six (86) persons.

The exhibit lists, primarily by last name, individuals who closed on settlements with Maximum Impact Title between October 2005 and November 2006. Mr. Walpole conducted the transactions listed on this exhibit. The list does not include all Maximum Impact Title closings and therefore individuals not members of the prospective class would not be listed on the register. The register is likely an accurate representation of the maximum possible class size.

This proposed class involves individuals who were brought into the process by Linda Sadr or a representative of Ms. Sadr, had their settlement conducted by Forrest Walpole as a representative of Maximum Impact Title and whose proceeds were partially directed to Maximum Impact Financial Services.

## III.    THE NAMED PLAINTIFFS

## A.    The Hamilton Family

Melvin and Renee Hamilton are a married couple with school aged children.  In January 2006 the Hamiltons resided at 11646 Dorado Beach Court, Waldorf, Maryland 20602.  They were introduced to the mortgage forgiveness program through a member of their church, Redeeming Life Ministries, International, in White Plains, Maryland.  Their refinancing took place on January 12, 2006 and the settlement agent was Forrest Walpole, Attorney At Law. The title company was Maximum Impact Title.

The Hamiltons refinanced their home for $436,500.  The payoff for the first mortgage on their home was $282,824.25.  Once fees and other expenses had been paid, the "cash to borrower" listed on the HUD-1 Statement reflected that the Hamiltons were entitled to $135,856.32.

The Hamiltons did not receive this money.  After settlement, the Hamiltons received approximately $300.00.  The remainder of the proceeds, in excess of $135,000, was diverted to Maximum Impact Title and Maximum Impact Financial Services, LLC.

Prior to the refinance process, the Hamiltons' monthly mortgage payment was approximately $1,900.  That after the refinance had been completed, the Hamiltons' monthly mortgage increased to approximately $4,200.

Linda Sadr and Forrest Walpole directed the Hamilton settlement.  Mr. Walpole was responsible for preparing the settlement documents and providing the same to the Hamiltons for their review and signature.  Mr. Walpole executed documents involved in the settlement process.  After the settlement, Ms. Sadr convinced the Hamiltons to have the refinance funds directed to Maximum Impact Title, LLC and Maximum Impact Financial Services for participation in the alleged program.

- 8 -

The Hamiltons' mortgage was paid for a period of time after the completion of the refinance process.  However, their came a point when the mortgage was no longer being paid and they began to receive notices of the delinquency of their mortgage payments.  The Hamiltons contacted Ms. Sadr and were advised this was part of the mortgage elimination process.

The Hamiltons were thereafter led on a series of wild goose chases by Ms. Sadr which mislead them and kept them ignorant of the underlying ponzi scheme.  These misrepresentations included the filing of a lawsuit in Circuit Court purportedly challenging the bank's ability to continue to collect the mortgage.  The Hamiltons also attended a meeting in Northern Virginia with approximately 200 other individuals who were participating in the alleged program with Ms. Sadr.  At that meeting, Ms. Sadr collected further information from the individuals, explained to them the process was proceeding as planned and continued to mislead the individuals as to the true nature of the improper transactions.

That the Hamiltons lost their home as a result of the debt incurred in this transaction.

**B.      The Fields Family**

Marcia and Willie Fields were, as of October 2006, a married couple living at 42426 Keith Court, Hollywood, Maryland.  The Fields refinanced their home on October 20, 2006 at the Law Offices of Forrest Walpole located at 501 Slaters Lane, Suite 19, Alexandria, Virginia 22314.  The Fields refinanced their home for $261,000.  The payoff for their first home and associated debts was $150,978.20.  The "cash to borrower" as listed on the Settlement Statement for Mr. and Mrs. Fields was $97,142.90.   They did not receive this cash.

Mr. and Mrs. Fields were brought into the mortgage elimination program by a member

of their church,  Redeeming Life Ministries, International, in White Plains, Maryland.  They were advised that the program was a mechanism whereby individuals could have their mortgage eliminated after eighteen months of participation in the process.  The Fields received "proof" of the process's legitimacy when they were advised by Ms. Barrett that her mortgage had been entirely paid off through her participation in the program.

The Fields did not receive the $97,142.90 indicated on their HUD-1.  Rather, they received $5,770.84.  The remainder of the money which was represented on the HUD-1 to flow to the Fields actually went as $42,222.06 to Maximum Impact Financial Services and $49,150.00 to RLG Processing (a Linda Sadr entity).

The settlement was conducted at Mr. Walpole's office.  Ms. Sadr and Mr. Walpole were present during the settlement process.  Mr. Walpole prepared the documents and provided documents to the Fields for their signature at the time of settlement.   Mr. Walpole executed all necessary documents, including but not limited to the Deed, and had necessary communications with the lender.

Once the settlement documents had been signed, Ms. Sadr enticed the Fields to direct the proceeds from their refinance to her corporate entities.  The Fields were never advised that Mr. Walpole had an ownership interest in any of these entities.  They were also not advised that Mr. Walpole was paid a salary from the entities which were being funded by the proceeds of their refinance settlement.

The Fields' mortgage was paid for a period of time and then, like the Hamiltons, began to receive notice from the lender that the mortgage was not being paid.  They filed lawsuits like the Hamiltons, attended the same meeting with the Hamiltons and were generally led through

- 10 -

the same process as the Hamiltons until the eventual foreclosure of their residence.

## C.     Carlton Powell

Carlton Powell participated in a refinance of his property on May 25, 2006.  The property address is 1903 Wooded Way, Hyattsville, Maryland 20783.  Mr. Powell still resides at this address.

Mr. Powell was brought into this program by his son, Juan Guirola.  Mr. Guirola was one of Ms. Sadr's "marks" who brought other persons into the program.  Mr. Powell's settlement was conducted at the Law Offices of Forrest Walpole,  501 Slaters Lane, Suite 19, Alexandria, Virginia 22314. The loan documents indicate that Maximum Impact Title was the title company involved in the process.

Mr. Powell refinanced his home for $477,000.  The existing mortgage on his home prior to refinance was $263,530.98.  After this amount and associated debts were accounted for, the "cash to borrower" listed on Mr. Powell's HUD-1 was $143,393.18.  Mr. Powell did not receive this amount.

The proceeds of Mr. Powell's refinance were directed as follows: $6,684.62 to Mr. Powell, $71,550.00 to Maximum Impact Financial Services, and $65,158.56 to RLG, Inc.  The transfer of funds was executed according to a wiring instruction signed by Mr. Powell and his wife at the conclusion of the refinance settlement.  Mr. Walpole conducted the settlement and provided all documents to Mr. Powell during the settlement.  The settlement was conducted in Mr. Walpole's office and Mr. Walpole guided Mr. Powell through the settlement.

Once the settlement had been completed Mr. Walpole left the room and Ms. Sadr entered the settlement room to discuss the distribution of the refinance proceeds.  The refinance

proceeds were directed according to the wiring instructions which had been prepared by Ms. Sadr.

Mr. Powell began receiving notices from his lender regarding delinquency of payment. He thereafter followed the same course as the Hamiltons and Fields in the alleged challenging of his mortgage and broken promises with Ms. Sadr.  He did not lose his home but never recovered the money lost through the improper refinance process.

## IV.    THE COURT SHOULD CERTIFY THE CLASS IN THIS CASE

### a.    Governing Principles

#### i.    *Rule 23 favors certification*

"Doubts regarding the propriety of class certification should be resolved in favor of certification." *Buford v. H & R Block, Inc.,* 168 F.R.D. 340, 346 (S.D.Ga.1996), *citing* 4 H. Newberg & A. Conte, NEWBURG ON CLASS ACTIONS § 7540 (3d ed. 1992); *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Brown v. Cameron-Brown Co.,* 92 F.R.D. 32, 49 (E.D.Va.), *rev'd on other grounds,* 652 F.2d 375 (4th Cir.1981); *see also, e.g., In re Amerifirst Sec. Litig.,* 139 F.R.D. 423, 427 (S.D. Fla. 1991) ("the interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing a class action"); *see also Frost v. Mazda Motors of America, Inc.,* 353 N.C. 188, 193, 540 S.E. 2d 324, 327-328 (N.C. 2000) (same); *Smith v. Behr Process Corp.,* 113 Wash. App 306, 54 P.3d 665 (Wash. App. 2002) (same).

The reason to favor class certification is that class action lawsuits are essential, and often the only practical way, to enforce consumer protection laws.

In a large and impersonal society, class actions are often the last barricade of

consumer protection .... To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action - private suits or governmental actions - have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are not truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.

*Eshaghi v. Hanley Dawson Cadillac Co.,* 214 Ill. App. 3d 995, 574 N.E. 2d 760, 764 (Ill.

1991).

This approach was echoed by this Court in *Arrington v. Colleen,* Inc., 2001 WL

34117734 at * 1 (D. Md. Apr. 2, 2001):

Class certification is a useful tool which can economize and focus judicial resources by allowing the court to consolidate similar claims and provide consistent and conclusive final judgments. Class certification also allows claims that may not otherwise be brought, because the cost of bringing the individual claim is prohibitive when the remedy is either injunctive relief or small monetary damages.

This matter contains allegations under the Maryland Consumer Protection Act[2].  Consumer

---

[2]The Maryland General Assembly enacted the Consumer Protection Act (CPA) as a "comprehensive consumer protection act to provide protection against unfair or deceptive practices in consumer transactions." Citaramanis v. Hallowell, 328 Md. 142, 150, 613 A.2d 964 (1991), *citing* Section 13-102(b) Commercial Law Article, Annotated Code of Maryland.  The General Assembly found that existing laws were "inadequate, poorly coordinated and not widely known or adequately enforced."  Id. citing Section 13-102(a)(2).

The intention of the legislation was to set minimum statewide standards for the protection of consumers.  Id.  "To realize this end, the General Assembly sought to implement strong protective and preventative measures to assist the public in obtaining relief from unlawful consumer practices and to maintain the health and welfare of the citizens of the state." Id. *citing* Section 13-102(b)(3).  In 1976, the CPA was amended to include consumer real estate within its coverage.  Id.

The General Assembly enacted the CPA in response to mounting concern over the increase of deceptive practices in connection with the sales of merchandise, real property and the services and the extension of credit. Morris v. Osmose Wood Preserving, 340 Md. 591, 536, 667 A.2d 624 (1994).  The Act prohibits certain unfair and deceptive trade practices "in the sale, lease, rental, loan or bailment of any consumer goods, consumer realty or consumer

cases are routinely certified as class actions by courts in Maryland and elsewhere.  The United States Supreme Court has noted that cases involving consumer or securities fraud or violations of anti-trust laws are especially appropriate for class action treatment. *Amchem Product, Inc. v. Windsor,* 521 U.S. 591, 625 (1997). This Court has certified numerous consumer class actions. *See, Benway,* 239 F.R.D. 419 (certified class action claims for violation of RESPA); *Mitchell-Tracey v. United General Title Insurance Company,* 237 F.R.D. 551 (D. Md. 2006) (certifying two consumer classes against title insurance underwriter for agents' overcharges); *Peoples v. Wendover Funding, Inc.,* 179 F.R.D. 492, 497 (D.Md. 1998) (certifying consumer class action against loan servicer); *Crowder v. Americredit Financial Services, Inc.,* 06-cv-00707-PWG (D.Md. 2007)(consumer class action certified June 12, 2007 for settlement against auto finance company and debt collector).

> ii. ***This is the type of case for which the Class action mechanism was established***

This Court should find that the allegations against the Defendants - namely, that Defendants operated and/or participated in a "mortgage foregiveness program" designed to mislead individuals, including but not limited to the named plaintiffs, and strip them of the equity in their home for the benefit of the Defendants - raises questions which can and should be resolved in a class action. The legal and factual issues which will control resolution of this case for the Named Plaintiffs and for all Class members are relatively simple and straightforward.  This case does not present the complexity of anti-trust or other types of cases which are commonly certified as class actions. *See,*

---

services..." Id. at 537, citing Section 13-303.

*e.g., In Re A. H. Robbins Co., Inc.,* 880 F.2d 709 (4th Cir.), *cert. denied,* 493 U.S. 959 (1989) (mass

tort); *In Re Carbon Dioxide Anti-Trust Litigation,* 149 F.R.D. 229 (M.D. Fl. 1993); *Phillips*

*Petroleum Company v. Shutts,* 472 U.S. 797 (1985) (securities fraud).

### iii. *This Circuit Has Certified RESPA Class Actions*

Though the instant litigation does not directly bring RESPA claims, certain portions of

RESPA are implicated in this action and prior action by this Court regarding such claims is

appropriate.  This Court certified a RESPA class action which alleged a scheme to obtain unlawful

referral fees in violation of RESPA. *Benway v. Resource Real Estate Services, LLC,* 239 F.R.D.

419 (D. Md. 2006).  In *Benway,* plaintiffs alleged that a title company and a mortgage broker

created an affiliated business arrangement (ABA) to extract unlawful referral fees from borrowers.

Other RESPA cases in recent years have also been certified for class treatment. *See e.g. Keneipp*

*v. Fountainhead Title Corp.,* Civil Action No. 03-cv-02813-WMN (D. Md.) (settled January 2006)

(consumer RESPA class action); *Gray v. Fountainhead Title Group Corp.,* Civil Action No. WMN

03-cv-01675 (settled August 2004) (consumer RESPA class action); *Clark v. Amerix Mortgage,*

Civil Action No. WMN 02-cv-2078 (U.S.Dist.Ct Md.) (settled and certified on May 23, 2003)

(consumer RESPA class action); *Naughton v. Millennium Title & Escrow,* Civil Action No. WMN

02-cv-3238 (U.S.D.C. Md.) (settled and certified on Jul. 21, 2003) (RESPA class); *Greer v. Crown*

*Title,* Cir. Ct. Balt. City, Case No. 24-C-02001227 (settled and certified on Aug. 26, 2005)

(consumer class action alleging sham affiliated business arrangements).  Similarly this case

involves claims of improper ABA, non-disclosure of such arrangements and improper kick backs.

### b.     Legal Requirements for Certification

Rule 23 states that "at an early practicable time[3]" the Court must determine whether to certify the case as a class action. Four requirements for class certification are set forth in Rule 23(a). If all four requirements are satisfied, the Court then looks to Rule 23(b) to determine whether any of three additional criteria is present.

The four requirements of Rule 23(a) are:

(1)     The class is so numerous that joinder of all members is impracticable,
(2)     There are questions of law or fact common to the class,
(3)     The claims or defenses of the representative parties are typical of the claims or defenses of the class, and,
(4)     The representative parties will fairly and adequately protect the interests of the class.

All four requirements of part (a) are met in this case.

### Rule 23(a)(1) - <u>Numerosity</u>

The focus of the numerosity requirement of Rule 23 is judicial economy. "The rule does not set out a precise numerical standard, but presents an impracticability of joinder requirement, of which class size is an inherent consideration." 1 H. Newberg and A. Conte, *Newberg on Class Actions,* § 3:5 (4th ed. 2003). *Peoples v. Wendover Funding, Inc.,* 179 F.R.D. 492, 497 (D.Md. 1998).

Thus, class sizes of 30-40 members usually raise a presumption that the numerosity requirement is satisfied:

> Certainly, when the class is very large - for example, numbering in the hundreds - joinder will be impracticable; but in most cases the number that will, in itself, satisfy the Rule 23(a)(1) prerequisite should be much lower... In light of prevailing precedent, the difficulty inherent in joining as few as 40 class

---

[3]Ms. Sadr has yet to file a responsive pleading in this case however discovery has recently closed in the portion of the case initially at issue.  The Plaintiffs believe even though the matter against Ms. Sadr is still "new" the action is at an appropriate stage for this Court to consider this motion.

members should raise a presumption that joinder is impracticable,' and the plaintiff whose class is that large or larger should meet the test of Rule 23 (a)(1) on that fact alone.

1 H. Newberg and A. Conte, *Newberg on Class Actions,* § 3:5 (4th ed. 2003). *See also Peoples v. Wendover Funding,* 179 F.R.D. 492, 497 (D.Md. 1998) (noting that "[i]mpracticability refers only to difficulty, not impossibility"); *Dameron v. Sinai Hospital of Baltimore, Inc.,* 595 F. Supp. 1404, 1408 (D. Md. 1984). Classes with as few as 18 members have been certified. *See e.g. Cypress v. Newport News Gen. & Nonsectarian Hosp. Assn.,* 375 F.2d 648 (4th Cir. 1967).

Plaintiffs need not show the precise number of members in the class, *Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 930 (11th Cir. 1983); *Folsum v. Blum,* 87 F.R.D. 443, 445 (S.D.N.Y. 1980), because "a contrary rule would foreclose most class litigation . . . ." 1 Newberg and A. Conte, *Newberg on Class Actions,* § 3:5 (4th ed. 2003).

As set forth above, the class size in this case is likely less than the eighty six persons identified in Exhibit 1.  In this circumstance, the numerosity prong of Rule 23 is satisfied. As Professor Newberg notes:

> The numerosity requirement is met when plaintiffs demonstrate that the number of potential class members is large, even if plaintiffs do not know the exact figure. Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.

*1 Newberg on Class Actions* § 3:3 (4th ed. 2004).

### Rule 23(a)(2) - <u>Commonality of Issues</u>

Rule 23(a)(2) requires only that there be a single common question of law ***or*** fact in order for the court to certify the class action.  This case raises numerous questions of both law and fact which are common to the Class.

The common issues include the following:

(a) Whether the actions of the Defendants were unfair and deceptive in violation of the Maryland Consumer Protection Act;

(b) Whether the Defendants engaged in a pattern of conduct designed to deceive persons;

(c) Whether the Defendants were unjustly enriched through the ponzi scheme;

(d) Whether the Defendants and their respective principals breached duties to Plaintiffs and members of the Class, causing them damages;

(e) Whether the acts of the Defendants caused damages to the Plaintiffs and members of the Class.

(f) Whether the Defendants and their principles were unfair and/or deceitful in their transactions with the Plaintiffs and members of the Class.

"It is important to note that [Rule 23(a)(2)] does not require that all questions of law and fact raised by the dispute be common . . . ." C. Wright and A. Miller, *Federal Practice and Procedures*, §1763 at 12681 (West 1994); *Arrington v. Colleen, Inc.,* 2001 WL 34117734, *3 (D. Md. Apr. 2, 2001). In fact, a single common question has been deemed sufficient to satisfy the commonality requirement. *Peoples v. Wendover Funding,* 179 F.R.D. 492, 498 (D. Md. 1998) (holding that a single common issue is sufficient to satisfy commonality); *German v. Federal Home Loan Mortgage Corp.,* 885 F. Supp. 537, 553 (S.D.N.Y. 1995)(citing *Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 198 (S.D.N.Y. 1992)). "Thus, factual differences among class members' cases will not preclude certification if the class members share the same legal theory." *Peoples,* 179 F.R.D. at 498 *(citing Brown v. Eckerd Drugs, Inc.,* 663 F.2d 1268, 1275 (4th Cir. 1981), *vacated on other grounds,* 457 U.S. 1128 (1982))

The pertinent factual and legal issues in this case clearly are common to the class. Here, the scope of the central question pertinent to the class members - that Defendants operated and/or participated in a "mortgage forgiveness program" designed to mislead individuals, including but not limited to the named plaintiffs, and strip them of the equity in their home for the benefit of the Defendants - is identical in all material respects. After all, Plaintiffs assert that the scheme was a standardized and organized business plan designed to strip the equity of the homes from the Plaintiffs in a uniform manner. The inquiry in this case will focus in large part on standardized forms and the same pattern of behavior that are uniform with respect to each Defendant's operations.

Plaintiffs also suggest the assessment of damages in this case is a straightforward mathematical calculation - Defendants are liable for all amounts listed as "cash to borrower" which went to an entity owned and/or operated by the Defendants.  This figure is easily ascertainable through the HUD-1 prepared in each transaction involving Named Plaintiffs and the other members of the putative class.

Legal and factual questions will be viewed as commonly shared so long as "their resolution does not depend on the facts of any class member's particular claims, but depends rather on the evidence presented taken as a whole." *Chapelle v. E.I. DuPont DeNemours & Co.,* 75 F.R. D. 74, 77 (E.D. Va. 1977). The practices alleged in this case were uniformly applied through form-driven settlement procedures.  These forms did not vary in format from one borrower to another and this action is further limited to a set of settlements conducted by Forrest Walpole on behalf of Linda Sadr.

Despite some minor factual differences, the questions of law linking the Class are

substantially related to the resolution of the litigation (*i. e.* all Class members' rights were violated and relief should be awarded). *Himmler v. Weinberger,* 422 F. Supp. 196, 199 (E.D. Mich. 1976), *rev'd on other grounds,* 611 F.2d 137 (6" Cir. 1979) *(citing American Finance System, Inc. v. Harlow,* 65 F.R.D. 94, 107 (D. Md. 1974)); *Harris v. Palm Springs Alpine Estates,* 329 F.2d 909 (9"' Cir. 1964).  In the present case, not only are factual differences slight and irrelevant to the claims, uniform questions of law determine whether relief will be granted. The requirement of commonality is satisfied.

### Rule 23(a)(3) - <u>Typicality of Claims</u>

Each class member's claim is typical:

> [T]he typicality prerequisite of Rule 23(a) has been construed to require that the relief sought will benefit all class members within the class be so unique as to impair the necessary alignment of interest. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974)) . . . [A] general course of conduct by the opposing parry which affects the entire class to a same or similar degree, will substantiate the appropriateness of class action status. *Kaufman v. Lawrence,* 76 F.R.D. 397 (S.D.N.Y. 1977).

*Ramirez v. Webb,* 102 F.R.D. 968, 971 (W.D. Mich. 1984).

The facts underlying the named Plaintiffs' transactions are as typical as they are straightforward.  Like all Class members, the Named Plaintiffs entered into the "mortgage forgiveness program" through the Defendants. Like all of the class members, the Named Plaintiffs' transactions were settled by the Defendant Walpole through Maximum Impact Title and the proceeds were diverted to Maximum Impact Financial Services and other Linda Sadr owned entities.  Like all of the Class Members, the HUD-1 Settlement Statements for the Named Plaintiffs' and misrepresented the amount of money that was given as "cash to the borrower" to the Named Plaintiffs. Like all of the Class Members, the Defendants directed these funds due to the

Named Plaintiffs to the Defendants.

As stressed in *Peoples,* 179 F.R.D. at 498, "[t]he test for determining typicality is whether the claim or defense arises from the same course of conduct leading to the class claims, and whether the same legal theory underlies the claims or defenses." "Thus, while the claims of particular individuals may vary in detail from one to another, the collective claims focus on particular policies applicable to each class member thereby satisfying the typicality requirement of Rule 23(a)." *Briggs v. Brown & Williamson Tobacco Corp., Inc.,* 414 F. Supp. 371, 375 (E.D. Va. 1976).

In this case, Plaintiffs' claims present virtually identical fact patterns and legal theories which each Class member would have to present if he or she filed an individual suit. The claim of every Class member is based upon the same conduct by the Defendants. The Named Plaintiffs' claims are, therefore, not only typical of the claims of the Class, they are virtually identical to them. *See Kohl v. Assoc. of Trial Lawyers of America,* 183 F.R.D. 475, 484 (D. Md. 1998); *Benway,* 239 F.R.D. at 424.

### Rule 23(a)(4) -<u>Adequacy of Representation</u>

The standards of Rule 23(a)(4) are met if it appears that the named plaintiffs' interests are not antagonistic to those of other class members and that the plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation. *See e.g., Peoples,* 179 F.R.D. at 499; *Bogosian v. Golf Oil Corp.,* 561 F.2d 434, 449 (3d Cir. 1977), *cert. denied,* 434 U.S. 1086 (1978); *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011 (1975); *Brown v. Cameron-Brown,* 92 F.R.D. 32, 40-41 (D.C. Va. 1981).

The requirement of adequate representation is not a search for a perfect plaintiff with an

unassailable claim. The requirement merely assures that absent class members, who will be bound by the result, are protected by a vigorous and competent prosecution of the case by someone who shares their interests. *See* 1 Newberg and A. Conte, *Newberg on Class Actions,* § 3:21 (4th ed. 2004); *see also George v. Baltimore City Public Schools,* 117 F.R.D. 368, 371 (D. Md. 1987). The Court needs to ensure "that the relationship of the representative parties' interests to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit." *Bogosian,* 561 F.2d at 449.

The Named Plaintiffs in this case have no claim or interest that conflicts with those of the Class. Named Plaintiffs have followed this case diligently and are prepared to answer discovery and testify at trial. *See* Exhibits 2, 3, and 4, Affidavits of Named Plaintiffs.

Likewise, Named Plaintiffs and the Class in this case are represented by competent and experienced counsel who have represented numerous classes in actions involving consumer frauds and other legal violations. As set forth in the attached Affidavit of Counsel, Exhibit 5, Counsel for the Class, Michael J. Winkelman, has served as counsel in several other class actions, including cases in this Court.  His co-counsel, John Michael Harrison, is familiar with the real estate transactions relevant to this case.

### c.      A Class Action Is Appropriate Because the Criteria of Rule 23(b) Are Satisfied

After finding that all four requirements of Rule 23(a) have been met, the Court should certify the case as a class action ***if any*** one of three criteria in part (b) of the Rule is satisfied.

### Rule 23(b)(1)

Here, the causes of action brought by the Plaintiffs form the necessary backdrop to certify

- 22 -

this as a Rule 23(b)(1) class action.[4]  Each of the causes of action brought by the Plaintiffs seeks

to enforce duties and obligations owed the members of the Class in common, collectively and

indivisibly. Consequently, inconsistent or varying adjudication of claims to enforce those duties

or obligations with respect to individual members of the Class would establish incompatible

standards of conduct for the Defendants [Rule 23 (b)(1)(A)]; and adjudications with respect to

individual members of the Class would, as a practical matter, be dispositive of the interests of other

members not parties to the adjudications or substantially impair or impede their ability to protect

their interests. [Rule 23(b)(1)(B)]. *See DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171 (8th Cir. 1995)

(where claims of individual plaintiffs would essentially determine liability, a (b)(1) certification

is appropriate against a bank for over escrowing accounts); *Cass Clay Inc. v. Northwestern Public*

*Service Co.,* 63 F.R.D. 34, 36-37 (D.S.D. 1974) (23(b)(1) requirements met in action against utility

company for overcharging customers where distribution of overcharges to customers would come

from one fund).

    As noted recently by Judge Davis in certifying a Rule 23(b)(1) class in an action involving

title insurance charges, the cause of action in this case is "based on an alleged pattern of repeated

behavior by the Defendants and can be most effectively adjudicated by a class action so as to avoid

inconsistent outcomes." *Mitchell-Tracey,* 237 F.R.D. at 559; *see also Cohen v. Chicago Title,* 242

---

    [4]A Rule 23(b)(1) class action is maintainable if:
(1)     The prosecution of separate actions by or against individual members of the class would
create a risk of
(A)     inconsistent or varying adjudications with respect to individual members of the class
which would establish incompatible standards of conduct for the party opposing the class, or
(B)     adjudications with respect to individual members of the class which would as a practical
matter be dispositive of the interests of the other members not parties to the adjudications or
substantially impair or impede their ability to protect their interests.

F.R.D. 295 (E.D. Pa. 2007) (certifying class under Rule 23 finding, in part that "separate actions would risk inconsistent verdicts, but, adjudication as to one class member would fairly dispose of the claims of all class members").

Whether the cause of action is predicated on the issue of the Defendants' deceitful conduct in violation of the Maryland Consumer Protection Act, or is found to constitute an unjust enrichment or is otherwise found to be actionable, each cause of action is a claim related to the same set of transactions. Each cause of action is objective in nature and is the same claim no matter which borrower pursues the claim. Each claim is not particularized or differentiated by the peculiar or personal characteristics of any Class member. Simply stated, either the Defendants' actions are in violation of the law, or they are not. *See Zachary v. Chase Manhattan Bank,* 52 F.R.D. 532, 534 (S.D.N.Y. 1971) (action against bank for making finance charges in excess of legal rate certified as (b)(1) action since as a practical matter individual action would be dispositive of claims of the class). If the acts of the Defendants do violate the law, then the identical cause of action exists in favor of all the persons to whom the conduct was directed.

### Rule 23 (b)(3)

Class certification is also appropriate under FED. R. Civ. P. 23(b)(3) because the most important issues in this case, both factually and legally, are predominantly common to the Class. In this case with the passage of time since the transactions and the difficulty of obtaining particular information for each individual class member class action adjudication the only practical way in which the borrowers can obtain relief against the Defendants. This is the situation addressed by Rule 23(b)(3) which states that a class action is maintainable where:

The court finds that questions of law or fact common to the members of the class

dominate over any questions affecting only individual members and that a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.

It is black letter law that in determining whether common issues predominate, the Court's inquiry should be directed primarily toward the issue of liability. *See Bogosian,* 561 F.2d at 456; *see also, Snider v. Upjohn,* 115 F.R.D. at 541; *In re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322, 345 (E.D. Pa. 1976).

This case focuses on the uniform and consistent practice of the Defendants which involved unfair and deceptive trade practices.  These practices give rise to common issues of law and fact which predominate over any possible individual issues in this case.

As this Court has stressed: "Generally, certification under this Rule is appropriate when settling the parties' differences in a single proceeding serves their interests by achieving `economies of time, effort, and expense,' and by promoting uniformity of decisions as to similarly situated class members without sacrificing fairness." *Peoples,* 179 F.R.D. at 501 (quoting *Amchem Product, Inc. v. Windsor,* 521 U.S. 591, 615 (1997)). As the United States Supreme Court recognized in *Amchem Product, Inc.,* 521 U.S. at 625 (emphasis added):

> ***Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.***

In fact, as noted above, the common questions of law and fact are virtually the ***only*** issues in this case.

In *Arrington v. Colleen, Inc.,* 2001 WL 34117734 *8 (D. Md. Apr. 2, 2001), this Court, in certifying a consumer class alleging TILA violations, wrote that:

> In determining whether a class satisfies the requirement of Rule 23(b)(3), a court should consider: (A) the interest of members of the class in individually controlling

the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Based upon this analysis, it is clear that certification is appropriate.  The persons harmed through the actions which form the foundation of this action have suffered tremendous harm. Many of these people lost their homes through the unfair and deceptive practices of the Defendants. This has made locating the individuals difficult.  Additionally many of the individuals no longer posses their HUD-1 or other closing documents.  Without these documents they are unable to sufficiently present their claim to the Court at this time.

This does not mean these individuals were not harmed.  To the contrary we know the Class individuals were all harmed through the scheme of the Defendants.  We know this due to their recollections but also due to the criminal prosecution of Ms. Sadr.  Though this prosecution resulted in Ms. Sadr being placed in jail for her criminal actions it has not resulted in compensation to the individuals harmed by the actions of the Defendants.  The instant action seeks to provide such compensation to the Class harmed through this ponzi scheme.

Additionally, judicial resources are economized and focused by handling this case as a class action.  *Arrington,* 2001 WL 34117734 at *8. Indeed, unless the Class members obtain relief through this class action, most of the Class will not be able to bring a civil action. There simply is no other practical means for this Class to challenge a practice which stands in clear violation of controlling law. "The desirability of providing recourse for the injured consumer who would otherwise be financially incapable of bringing suit and the deterrent value of class litigation clearly render the class action a viable and important mechanism in challenging fraud on the public." 6 H.

Newberg and A. Conte, *Newberg on Class Actions* § 21:30 (4th ed. 2003).

Finally, there are no manageability issues that would preclude certification. The issue of "manageability" was recently discussed in *In Re: Visa Check/Master Money Antitrust Litigation,* 280 F.3d. 124 (2nd Cir. 2001), *cert. denied,* 122 U.S. 2382 (2002), where the Second Circuit affirmed the certification of a class which consisted of every business in the United States, large and small, that accepted Visa and/or MasterCard credit cards. The class literally consisted of millions of businesses in all fifty states ranging in size from Wal-Mart to the local dry cleaner. The defendants' major challenge on appeal was on the issue of manageability. The Second Circuit first disposed of defendants' argument that individualized proof of damages should preclude certification, saying that "the fact that there may have to be individual examinations on the issue of damages has never been held[] a bar to class actions . . . ." Id. at 139. On the general issue of manageability, the Court stated:

> [F]ailure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored, and should be the exception rather than the rule.

Id. at 140 (citations omitted).

In this case, there are no management issues with respect to the Class defined above. The Class can be identified almost exclusively from Exhibit 1.   As a result, delivery of any notice under Rule 23(c)(2) will not be unduly difficult; nor are there other manageability issues that will hamper the management of this case as a class action.

Recognizing that consumer class actions in general are easy to manage, and understanding that in the absence of a class action, a failure of justice will result, numerous courts have found the class action approach superior in similar cases involving claims under RESPA, the common law,

and claims under consumer protection statutes. *See, e.g., Benway,* 239 F.R.D. 419 (certified RESPA class action claims); *Keneipp v. Fountainhead Title Corp.,* Civil Action No. 03-cv-02813-WMN (D. Md.) (settled January 2006) (consumer RESPA class action; *Crowder v. Americredit Financial Services, Inc.,* 06-cv-00707-PWG (D.Md. 2007)(consumer class action certified June 12, 2007 for settlement against auto finance company and debt collector); *Gray v. Fountainhead Title* Corp., Civil Action No. WMN 03-cv-01675 (settled August 2004) (consumer RESPA class action); *Clark v. Amerix Mortgage,* Civil Action No. WMN 02-cv-2078 (U.S. Dist. Ct. Md.) (consumer RESPA class action) (settled and certified on May 23, 2003); *Naughton v. Millennium Title & Escrow*, Civil Action No. WMN 02-cv-3238 (U.S.D.C. Md.) (RESPA class) (settled and certified on July 21; 2003); *Greer v. Crown Title,* Cir. Ct. Balt. City, Case No. 24-C-02001227 (consumer class action certified in action alleging that Defendants set up multiple sham affiliated business arrangements) (settled and certified on August 26, 2005 ); *Peoples,* 179 F.R.D. 492 (class of consumers whose rights under the Fair Debt Collection Practices Act were violated); *Singh v. Prudential Health Care Plan, Civil* Action No. AW-00-2168 (U.S. Dist. Ct. Md.) (certified August 2, 2005) (certifying consumer class action against HMO).

In fact, courts have long recognized that "[c]lass action certifications to enforce compliance with consumer protection laws are `desirable and should be encouraged.'" *Watkins v. Simmons and Clark, Inc.,* 618 F.2d 398, 404 (6th Cir. 1980). Not only does class certification enable class members to share in a financial recovery which they might otherwise never pursue on their own behalf, but it also "provides an opportunity to educate a segment of the public, those included in the class, of the obligations which creditors owe to them as credit consumers." *Id.* Accordingly, a class action is both manageable and far superior to that of individual claims.

## V. CONCLUSION

This case raises important factual and legal issues for approximately eighty homeowners, issues which are common to all.  The Named Plaintiffs share all of these claims with the Class and are committed to bringing them forward to a resolution on behalf of all Class members. The only practical method for adjudicating this case is through class certification. The Court should certify the Class as proposed.

The Law Offices of John Michael Harrison, LLC

By: _____

John Michael Harrison
4201 Northview Drive, Suite 405
Bowie, MD 20716
301-262-2353
888-461-2612 (fax)
jharrisonlaw@att.net

McCarthy, Winkelman & Morrow, LLP

By: _____

Michael J. Winkelman
4201 Northview Drive, Suite 410
Bowie, MD 20716
301-262-7422
301-262-0532 (fax)
mike@mcwmlaw.com

*Attorneys for Plaintiffs*

# EXHIBIT 1

# TITLE POLICIES SUMMARY
11/27/07

| | File Number/Box | Commitment Ordered | Payoff Ordered | Receipts In | Package to TW | Confirmed, Policy issued- |
|---|---|---|---|---|---|---|
| Harrison | 05-008/1 | | | | | X |
| Phanthana | 05-011/1 | | | | | X |
| Phung | 05-015/1 | | | | | X |
| Manarin | 05-016/1 | | | | | X |
| Sadr | 014/1 | | | | | X |
| Sard | 09/1 | | | | | X |
| Shivers | 05-017/1 | | | | | X |
| Hamnett | 05-018/1 | | | | | x |
| Suwannakarn | 05-13/1 | | | x | 2/21 | X |
| Arnett | 05-021/1 | | | x | | X |
| Armstrong | 05-022/1 | | | | X2/21 | x |
| Chanthakhoune | 05-023/1 | | | | X2/21 | x |
| Wildermuter | 05-025/1 | | | | | |
| Black | 05-024/1 | | | x | X2/21 | x |
| Merrill | 05-026/6 | | | x | X2/21 | X |
| Burke, Bruce | 05-027/1 | | | | 12/7/06 | ✓ |
| Barrett | 05-029/2 | | | x | X2/21 | X |
| Burke, Hoa | 05-032/2 | | | X | | X |
| Thompson | 05-033/2 | | | x | X2/21 | x |
| Huynh | 05-028/2 | | | x | X2/21 | X |
| Dao | 05-029/2 | | | x | X2/21 | X |
| Hamilton | 06-001/2 | | | x | X2/21 | X |
| Vu | 06-002/2 | | | x | X2/21 | X |
| Moungkhoth | 06-003/2 | | | x | X2/21 | X |
| McLeod | 06-005/2 | | | x | X2/21 | X |
| President | 06-006/2 | | | x | 3/14 | X |
| Salguero | 06-007/2 | | | x | 5/16/06 | |
| Drury | 06-008/2 | | | x | | x |
| Rodas | 06-010/2 | | | x | x | X |
| Lillis | 06-011/2 | | | x | X3/14 | x |
| Taylor | 06-012/2 | | | | | X |
| Cruel | 06-013/3 | | | x | | x |
| | | | | x | 5/16/06 | x |

# TITLE POLICIES SUMMARY

| Name / File Number/box | Commitment ordered | Payoff ordered | Receipts in | Package to TR | Confirmed issued |
|---|---|---|---|---|---|
| Wright/ 06-014/ 6 | | | | | |
| Martinez/ 06-016/ 3 | | | x | 12/7/06 | X |
| Nguyen, Phoung & Phung/ 06-017/ 6 | | | X | 5/16/06 | x |
| Gregory, Margaret/ 06-018 MD/ 4 | | | | | |
| Taylor, James/ 06-019 MD/ 5 | | | | | |
| Wilke, Walter 06-020/ 3 | | | x | x | x |
| Phrasavang 06-021 | | | DC | 5/16/06 | x |
| Phrasavang 06-022 | | | MD | Search only | |
| Prasavang 06-023 | | | VA | Search only | |
| Prasavang 06-029 | | | VA | Search only | |
| Smoot 06-024 | | | | Search only | |
| Howe 06-06-025 | | | | Search only | |
| Percel/ 06-026 MD/ 3 | | | x | 5/16/06 | x |
| Apahayvong/ 05-012/ 1 | | | x | 5/16/06 | x |
| Dalbec/ 06-027/ 6 | | | | 12/29/06 | o |
| Gomez/ 06-028/ 3 | | | x | | x |
| Fridinger/ 06-030 MD/ 3 | | | x | | x |
| Julich/ 06-031/ 3 | | | x | | x |
| Powell Carlton/ 06-033 MD/ 4 | | | x | | x |
| Austin/ 06-035 MD/ 5 | | | | 12/15 | x |
| Gray Joan 06-036 | | | x | | . |
| Jackson Nikita/ 06-037/ 3 | x | | x | | x |
| Pavon, R/ 06-038/ 4 | x | | | | x |
| Reed, Theresa/ 06-040/ 3 | | | | | x |
| Maximum Impact 06-042/ 6 | | x | | | x |
| Post office/ | | x | | | |
| Quan,/ 06-043/ 3 | X | | | | |
| Park, John/ 06-044/ 3 | x | x | | | x |
| Moore, Robert/ 06-045/ 4 | x | x  x | | | x |
| Barrett 06-046 | x | | x | | x |

O- Finished but not shipped are prepared invoice

2

# TITLE POLICIES SUMMARY

| | File Number/box | Commitment ordered | Payoff ordered | Receipts in | Package to TR | Confirmed Issued |
|---|---|---|---|---|---|---|
| Kim, K./ | 06-047/ 4 | X / | X / | x | | x |
| Heath, Earlean/ | 06-048/ 5 | X / | | | | 0 |
| Travis, Brandi/ | 06-049/ 5 | | | | 1/5/07 | 0 |
| Seitz/ | 06-051/ 5 | | | x | | x |
| Kim/ | 06-052/ 5 | | recorded | | 12/29/06 | 0 |
| Kim/ | 06-052A/ 5 | X | | | 12/10/06 | X |
| Yoo/ | 06-053/ 4 | X | x | | 12/10/06 | |
| Davies/ | 06-054/ 4 | x\x | x | | | x |
| Ware/ | 06-055/ 4 | x\x | x\x | | | x |
| Walpole | 06-056 | X\x | X\1 x | | 12/29/06 | X |
| Clarke, Detra | 06-057 | X\ | | | 12/29/06 | 0 |
| Fields, Willie/ | 06-058/ 5 | X | (1) x\ (2) x | | | |
| Cruel/ | 06-060/ 5 | X | X | X | 12/10/06 | X |
| Todman, Jacklyn/ | 06-061/ 6 | X | X | x | 1/5/07 | 0 |
| Kim, Hyung Pil/ | 06-064/ 6 | X | X | X | 12/15/06 | X |
| | | | | X | 12/15 | X |
| | | | | | | |
| | | | | | | |
| | | | | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **WILLIE FIELDS, et al** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Case No.: 11-cv-01000 DKC** |
| **FORREST WALPOLE, ESQ., et al** | * | |
| **Defendants** | * | |

_____

## DECLARATION OF MICHAEL J. WINKELMAN,
## COUNSEL FOR THE PROPOSED CLASS

I, Michael J. Winkelman, being of lawful age, declares:

1.  I have personal knowledge of the facts set forth herein.

2.  I submit this declaration in support of Plaintiffs' Motion for Class Certification, Appoint Named Plaintiffs as Class Representatives, and appoint me, Michael J. Winkelman, and John Michael Harrison as class counsel.

3.  I am an attorney first licensed to practice law in 1997.  I am currently admitted to practice before the Maryland Court of Appeals, Superior Court for the District of Columbia, United States District Court for the District of Maryland, and the Fourth Circuit.  I am currently a member of McCarthy, Winkelman & Morrow, L.L.P.

4.  McCarthy, Winkelman & Morrow, L.L.P. is a litigation firm located in Bowie, Maryland with particular emphasis in the litigation of complex civil litigation matters in State and Federal Courts in the Baltimore/Washington Metropolitan region, including but not limited to Maryland, the District of Columbia and, on occasion, Virginia and Delaware.

5.  I believe I have devoted all the resources necessary to pursuing the claims in this case and

McCARTHY,
WINKELMAN,
& MORROW,
L.L.P.
ONE TOWN CENTER
4201 NORTHVIEW DRIVE
SUITE 410
BOWIE, MD 20716
PHONE 301-262-7422
FAX 301-262-0562

will continue to devote the resources necessary to pursuing this litigation.

6.     My co-counsel in this case is John Michael Harrison of the Law Offices of John Michael Harrison in Bowie, Maryland.

7.     I worked as co-counsel in the class action case titled Dotson v. Bell Atlantic-Maryland in the Circuit Court for Prince George's County, Case Number CAL 99-21004.  This case involved claims brought against the Defendant for improper late fees and resulted in an approximately $27 million class settlement for injured parties.

8.     I was similarly involved, though not appointed as class counsel or co-class counsel, in the case of Maisonette v. Jones Intercable in the Circuit Court for Prince George's County, Case Number CAL 98-02283.

9.     That I have twice been employed as defense counsel to defend class action claims.  Those cases are:

    a.     <u>Herron v. Mayor and City Council of Annapolis</u> - Circuit Court for Anne Arundel County, Case Number C-2005-108929.  This case involved allegations of the improper collection of transportation impact fees.  I was successful in having this case dismissed in the Circuit Court for Anne Arundel County as well as the Maryland Court of Special Appeals.

    b.     <u>Herron v. City of Annapolis</u> - United States District Court for the District of Maryland, Case Number WDQ 04-1977.  This matter involved allegations the City of Annapolis and Anne Arundel County improperly collecting school impact fees as part of the permit approval process.  I was successful in having the case dismissed both in the United States District Court for the District of Maryland as

McCARTHY,
WINKELMAN,
& MORROW,
L.L.P.
ONE TOWN CENTER
4201 NORTHVIEW DRIVE
SUITE 410
BOWIE, MD 20716
PHONE 301-262-7422
FAX 301-262-0562

well as in the Fourth Circuit.

10.    As part of my practice I routinely handle matters pending in Federal Court.  I am familiar with the Rules applicable to Federal Court and electronic filings in Federal Court.

11.    My co-counsel, John Michael Harrison, is an experienced real estate/title attorney who practices in the State of Maryland.  That Mr. Harrison was first licensed to practice law in the State of Maryland in 1998 and is also licensed to practice law in United States District Court for the District of Maryland.   Mr. Harrison's practice concentrates in real property transactions, corporate transactions, consumer bankruptcy representation, consumer protection and other related litigation.

12.    Neither my co-counsel nor I have any interest that would adversely affect any of us from acting as class counsel in this action.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

_____02/06/12_____                                _____
Date                                                              Michael J. Winkelman

McCARTHY,
WINKELMAN,
& MORROW,
L.L.P.
One Town Center
4201 Northview Drive
Suite 410
Bowie, MD 20716
Phone 301-262-7422
Fax 301-262-0562

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **WILLIE FIELDS, et al** | * | |
| **Plaintiffs,** | * | |
| v. | * | **Case No.: 11-cv-01000 DKC** |
| **FORREST WALPOLE, ESQ., et al** | * | |
| **Defendants** | * | |

## AFFIDAVIT

I, Melvin Hamilton, hereby affirm under penalties of perjury that the following is true and accurate to the best of my knowledge, information and belief.

1.     I am over 18 years of age and competent to testify to the matter set forth below.

2.     I have reviewed the factual allegations of the Amended Complaint in this case, and all of the facts in it which relate to me and my transaction are true and accurate.

3.     I have been involved in procedural and legal matters associated with this transaction since 2006. I attended a seminar at the request of Linda Sadr with over 200 individuals who appeared to be similarly situated to me and had been the subject of a questionable transaction.

4.     That I participated in the criminal prosecution of Linda Sadr in Federal Court in Virginia. My participation included submitting certain documents and/or testifying at the sentencing.

5.     I am dedicated to this case and will put the interest of the class before my own individual interest, and will do what is necessary to participate in the case, and attend depositions and court dates as necessary, and any other requirements as Named Plaintiff on behalf of the Class.

McCARTHY,
WINKELMAN,
& MORROW,
L.L.P.
One Town Center
4201 Northview Drive
Suite 410
Bowie, MD 20716
Phone 301-262-7422
Fax 301-262-0562

03 FEB 12
_____
Date

Melvin Hamilton

McCARTHY,
WINKELMAN,
& MORROW,
L.L.P.
ONE TOWN CENTER
4201 NORTHVIEW DRIVE
SUITE 410
BOWIE, MD 20716
PHONE 301-262-7422
FAX 301-262-0562

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

WILLIE FIELDS, et al                    *

     Plaintiffs,                          *

v.                                      *       Case No.: 11-cv-01000 DKC

FORREST WALPOLE, ESQ., et al            *

     Defendants                           *

---

## AFFIDAVIT

    I, Renee Hamilton, hereby affirm under penalties of perjury that the following is true and accurate to the best of my knowledge, information and belief.

1.     I am over 18 years of age and competent to testify to the matter set forth below.

2.     I have reviewed the factual allegations of the Amended Complaint in this case, and all of the facts in it which relate to me and my transaction are true and accurate.

3.     I have been involved in procedural and legal matters associated with this transaction since 2006. I attended a seminar at the request of Linda Sadr with over 200 individuals who appeared to be similarly situated to me and had been the subject of a questionable transaction.

4.     That I participated in the criminal prosecution of Linda Sadr in Federal Court in Virginia. My participation included submitting certain documents and/or testifying at the sentencing.

5.     I am dedicated to this case and will put the interest of the class before my own individual interest, and will do what is necessary to participate in the case, and attend depositions and court dates as necessary, and any other requirements as Named Plaintiff on behalf of the Class.

McCARTHY,
WINKELMAN,
& MORROW,
L.L.P.
One Town Center
4201 Northview Drive
Suite 410
Bowie, MD 20716
Phone 301-262-7422
Fax 301-262-0562

2/3/12
_____
Date

Renee G. H_____
_____
Renee Hamilton

McCARTHY,
WINKELMAN,
& MORROW,
L.L.P.
ONE TOWN CENTER
4201 NORTHVIEW DRIVE
SUITE 410
BOWIE, MD 20716
PHONE 301-262-7422
FAX 301-262-0562

- 2 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIE FIELDS, et al                      *

     Plaintiffs,                          *

v.                                        *      **Case No.: 11-cv-01000 DKC**

FORREST WALPOLE, ESQ., et al              *

     Defendants                           *

---

## AFFIDAVIT

    I, Marcia Fields, hereby affirm under penalties of perjury that the following is true and accurate to the best of my knowledge, information and belief.

1.    I am over 18 years of age and competent to testify to the matter set forth below.

2.    I have reviewed the factual allegations of the Amended Complaint in this case, and all of the facts in it which relate to me and my transaction are true and accurate.

3.    I have been involved in procedural and legal matters associated with this transaction since 2006. I attended a seminar at the request of Linda Sadr with over 200 individuals who appeared to be similarly situated to me and had been the subject of a questionable transaction.

4.    That I participated in the criminal prosecution of Linda Sadr in Federal Court in Virginia. My participation included submitting certain documents and/or testifying at the sentencing.

5.    I am dedicated to this case and will put the interest of the class before my own individual interest, and will do what is necessary to participate in the case, and attend depositions and court dates as necessary, and any other requirements as Named Plaintiff on behalf of the Class.

McCARTHY,
WINKELMAN,
& MORROW,
L.L.P.
ONE TOWN CENTER
4201 NORTHVIEW DRIVE
SUITE 410
BOWIE, MD 20716
PHONE 301-262-7422
FAX 301-262-0562

2/3/12

Date

Marcia Fields

McCARTHY,
WINKELMAN,
& MORROW,
L.L.P.
ONE TOWN CENTER
4201 NORTHVIEW DRIVE
SUITE 410
BOWIE, MD 20716
PHONE 301-262-7422
FAX 301-262-0562

- 2 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **WILLIE FIELDS, et al** | * | |
| **Plaintiffs,** | * | |
| v. | * | **Case No.: 11-cv-01000 DKC** |
| **FORREST WALPOLE, ESQ., et al** | * | |
| **Defendants** | * | |

## AFFIDAVIT

I, Willie Fields, hereby affirm under penalties of perjury that the following is true and accurate to the best of my knowledge, information and belief.

1. I am over 18 years of age and competent to testify to the matter set forth below.

2. I have reviewed the factual allegations of the Amended Complaint in this case, and all of the facts in it which relate to me and my transaction are true and accurate.

3. I have been involved in procedural and legal matters associated with this transaction since 2006. I attended a seminar at the request of Linda Sadr with over 200 individuals who appeared to be similarly situated to me and had been the subject of a questionable transaction.

4. That I participated in the criminal prosecution of Linda Sadr in Federal Court in Virginia. My participation included submitting certain documents and/or testifying at the sentencing.

5. I am dedicated to this case and will put the interest of the class before my own individual interest, and will do what is necessary to participate in the case, and attend depositions and court dates as necessary, and any other requirements as Named Plaintiff on behalf of the Class.

McCARTHY,
WINKELMAN,
& MORROW,
L.L.P.
ONE TOWN CENTER
4201 NORTHVIEW DRIVE
SUITE 410
BOWIE, MD 20716
PHONE 301-262-7422
FAX 301-262-9562

2 - 3 - 12
_____                              Willie Fields
Date

McCARTHY,
WINKELMAN,
& MORROW,
L.L.P.
ONE TOWN CENTER
4201 NORTHVIEW DRIVE
SUITE 410
BOWIE, MD 20716
PHONE 301-262-7422
FAX 301-262-0562

- 2 -

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **WILLIE FIELDS, et al** | \* |
| **Plaintiffs,** | \* |
| **v.** | \*  **Case No.: 11-cv-01000 DKC** |
| **FORREST WALPOLE, ESQ., et al** | \* |
| **Defendants** | \* |

### AFFIDAVIT

I, Carlton Powell, hereby affirm under penalties of perjury that the following is true and accurate to the best of my knowledge, information and belief.

1.     I am over 18 years of age and competent to testify to the matter set forth below.

2.     I have reviewed the factual allegations of the Amended Complaint in this case, and all of the facts in it which relate to me and my transaction are true and accurate.

3.     I have been involved in procedural and legal matters associated with this transaction since 2006. I attended a seminar at the request of Linda Sadr with over 200 individuals who appeared to be similarly situated to me and had been the subject of a questionable transaction.

4.     That I participated in the criminal prosecution of Linda Sadr in Federal Court in Virginia. My participation included submitting certain documents and/or testifying at the sentencing.

5.     I am dedicated to this case and will put the interest of the class before my own individual interest, and will do what is necessary to participate in the case, and attend depositions and court dates as necessary, and any other requirements as Named Plaintiff on behalf of the Class.

McCARTHY,
WINKELMAN,
& MORROW,
L.L.P.
ONE TOWN CENTER
4201 NORTHVIEW DRIVE
SUITE 410
BOWIE, MD 20716
PHONE 301-262-7422
FAX 301-262-0562

_2 - 3 - 2012_
Date

_Carlton Parwell_
Carlton Powell

McCARTHY,
WINKELMAN,
& MORROW,
L.L.P.
ONE TOWN CENTER
4201 NORTHVIEW DRIVE
SUITE 410
BOWIE, MD 20716
PHONE 301-262-7422
FAX 301-262-0562

- 2 -

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **WILLIE FIELDS, et al** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Case No.: 11-cv-01000 DKC** |
| **FORREST WALPOLE, ESQ., et al** | * | |
| **Defendants** | * | |

_____

<u>**ORDER**</u>

Upon consideration of the Plaintiffs' Motion to Certify a Class Against Defendants, Appoint Named Plaintiffs as Class Representatives and Appoint Class Counsel, and any opposition thereto,

**IT IS ORDERED** that the Plaintiffs' Motion to Certify a Class Against Defendants, Appoint Named Plaintiffs as Class Representatives and Appoint Class Counsel is hereby **GRANTED,** and it is further

**ORDERED** that the proposed Class and Subclass are certified in this case, and it is further

**ORDERED** that the Named Plaintiffs' Motion to be named as Class Representatives be granted, and it is further

**ORDERED** that Michael J. Winkelman and John Michael Harrison are appointed as Class Counsel.

_____
Judge,
United States District Court For
The District Of Maryland

Copies to:

Michael J. Winkelman
John Michael Harrison
Aaron L. Handleman
Shannon L. Chaudhry
Maximum Impact Title
Maximum Impact Financial Services, LLC
Linda Lea Sadr