IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIE FIELDS, et al.,                    :

                                          :

     v.                                   :    Civil Action No. DKC 11-1000

                                          :

FORREST WALPOLE, ESQ., et al.             :

                                          :

**MEMORANDUM OPINION**

Presently pending and ready for review in this mortgage fraud case is the motion of Defendant Forrest Walpole, Esq. for summary judgment (ECF No. 71). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant Walpole's motion for summary judgment will be granted in part and denied in part.

**I.  Background**

**A.  Factual Background**

The following facts are either uncontroverted or considered in the light most favorable to Plaintiffs Willie Fields, Marcia Fields, Melvin Hamilton, and Renee Hamilton. Plaintiffs are individuals affected by an alleged "ponzi scheme" implemented by Defendants Linda Sadr, Forrest Walpole, Maximum Impact Title ("M.I. Title"), and Maximum Impact Financial Services ("M.I. Financial"). This scheme is described in detail in the Memorandum Opinion of July 6, 2011, resolving Defendant

Walpole's motion to dismiss. (ECF No. 22). Only the facts relevant to the two remaining claims against Mr. Walpole will be recounted here.

Defendant Forrest Walpole operates a law practice in Virginia, was a minority owner of Defendant M.I. Title, and was "the attorney who conducted the refinance that helped fund the equity stripping 'ponzi' scheme." (ECF No. 37, at 6). Defendants M.I. Title and M.I. Financial were business entities run by Defendant Linda Sadr, created to further "the improper transactions at issue in this case." (*Id.* at 4). In brief, the transactions worked as follows: individuals such as Plaintiffs would refinance their homes and give the cash-out proceeds from refinancing to M.I. Title and M.I. Financial. These entities, Ms. Sadr promised, would place the funds in escrow and pay each individual's mortgage for eighteen months, after which the mortgages would be paid off in full. (*Id.*, at 3). During this period, Ms. Sadr would file a strategic lawsuit challenging a "'loophole' that mortgage companies used to 'get paid twice,'" and ultimately have the court set aside Plaintiffs' mortgages. (*Id.*). Despite Sadr's representations, there was no "loophole" to exploit, Ms. Sadr did not pay off Plaintiffs' mortgages, and their properties eventually went into foreclosure.

Mr. Walpole formed M.I. Title in April 2005 to facilitate loan settlements for Ms. Sadr. (ECF No. 73-1, at 4). Mr. Walpole and Ms. Sadr had a 50/50 ownership interest in the company. (*Id.*). Mr. Walpole also became a licensed title insurance agent in Maryland to facilitate refinancings in this state. (*Id.* at 5). In January 2006, Mr. Walpole surrendered 49% of his ownership in M.I. Title to Ms. Sadr, retaining a 1% equity interest. (*Id.*). Mr. Walpole held no ownership stake in M.I. Financial. (*Id.* at 6). He later surrendered his remaining equity in M.I. Title. (*Id.* at 21).

Beginning in January 2006, M.I. Financial paid Mr. Walpole $10,000 per month as an independent contractor to facilitate mortgage refinances during the relevant time period, and issued him 1099 tax forms. (ECF No. 73-1, at 26). Individuals pursuing refinances, including Plaintiffs, also paid him $100 per transaction. (*Id.*). All of the transactions were "produced or steered toward M.I. Title," and portions of Plaintiffs' refinancing proceeds were paid to M.I. Title and M.I. Financial. (*Id.* at 7, 15). Mr. Walpole never told Plaintiffs of his ownership interest in M.I. Title or of any additional money he received from M.I. Financial as a result of the transactions. (*Id.* at 15-16).

###### B.    Procedural Background

Plaintiffs initially brought suit as a class action in the Circuit Court for Prince George's County, Maryland.   On March 12, 2011, Plaintiffs served the summons and complaint on Walpole, and on April 7, 2011, they served the remaining Defendants.   On April 18, the case was removed to this court on the basis of diversity of citizenship.   (ECF No. 1).   The complaint contains six counts:   negligence; violation of the Maryland Consumer Protection Act ("MCPA"); unjust enrichment; negligent misrepresentation; fraud; and violation of the Maryland Finder's Fee Act.   (ECF No. 2).   When M.I. Title and M.I. Financial failed to respond within the requisite time period, Plaintiffs moved for entry of default.   (ECF Nos. 17, 18).   The clerk entered default against those Defendants on June 28, 2011.   (ECF No. 19).

Separately, on April 25, 2011, Walpole moved to dismiss all counts against him for failure to state a claim.   (ECF No. 11). On July 6, 2011, in a memorandum opinion and order, this court dismissed four of the six counts against Walpole, leaving the unjust enrichment and MCPA claims.   (ECF Nos. 22, 23).   Walpole subsequently filed an answer on July 12, 2011.   (ECF No. 24). Plaintiffs requested leave to file an amended complaint on October 28, 2011 to add Linda Sadr as a Defendant (ECF No. 30), and that motion was granted in part on December 13, 2011 (ECF

Nos. 35, 36).  Plaintiffs filed a second amended complaint that same day.  (ECF No. 37).  Ten days later, Defendant Walpole filed an answer.  (ECF No. 38).  On February 6, 2012, Plaintiffs filed a motion to certify a class.  (ECF No. 47).  The next day, Defendant Walpole provided notice that he filed Chapter 7 Bankruptcy on February 3, 2012.  (ECF No. 48).  Default was entered as to Defendant Sadr on March 6, 2012.  (ECF No. 60). Due to Mr. Walpole's bankruptcy, the case was administratively closed.  (ECF No. 61).  The case was reopened on June 20, 2012, because the bankruptcy court lifted the stay for the limited purpose of allowing Plaintiffs to pursue the proceeds of Mr. Walpole's professional liability insurance policy.  (ECF No. 67).  Mr. Walpole then filed a motion for Summary Judgment on August 6, 2012.  (ECF No. 71).

## II.  Analysis

### A.  Summary Judgment

Only two claims remain against Mr. Walpole from Plaintiffs' complaint:  unjust enrichment and violation of the MCPA.  (ECF No. 22).  Because Defendant Walpole is exempt from the MCPA pursuant to section 13-104, summary judgment will be granted with respect to this claim.  Because genuine issues of material fact exist with respect to Plaintiffs' unjust enrichment claim, summary judgment will be denied as to that claim.

1.   **Standard of Review**

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [the] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). At the same time, the court must construe the facts that are presented in the light most

favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

### 2.  Maryland Consumer Protection Act

The MCPA, codified at Md. Code Ann., Comm. Law §§ 13-101, *et seq.*, "was intended to provide minimum standards for the protection of consumers in [Maryland]." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 140 (2007).  The Maryland legislature passed the Act "in response to mounting concern over the increase of deceptive practices" and out of a concern that "existing federal and State laws [were] inadequate, poorly coordinated and not widely known or adequately enforced." *Morris v. Osmose Wood Preserving*, 340 Md. 519, 536-37 (1995).  The Act is intended to be liberally construed in order to achieve its consumer protection objectives.  *See State v. Cottman Transmissions Sys., Inc.*, 86 Md.App. 714, 743 (1991).  The MCPA proscribes, *inter alia*, deceptive and unfair trade practices in the "sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services" and the "extension of consumer credit."  Md. Code Ann., Com. Law § 13-303 (2011).

In this case, Plaintiffs allege that Walpole violated the MCPA through false representations and omissions relating to the validity of the mortgage payoff program and their refinancings. (ECF No. 37, at 14-15).  In moving for summary judgment on this count, Mr. Walpole argues that he is statutorily exempt from

liability under the Act because it does not apply to attorneys. (ECF No. 71, at 6-7).  To support this position, Mr. Walpole cites § 13-104 of the MCPA:  "This title does not apply to: (1) The professional services of a . . . lawyer, . . . insurance company authorized to do business in the State, [or] insurance producer licensed by the State."  Md. Code Ann., Com. Law § 13-304(1) (2011).

Plaintiffs contend that Mr. Walpole cannot be exempt from statutory liability because he is not a Maryland-licensed attorney, but rather a "licensed . . . title insurance agent with the Maryland Insurance Administration."  (ECF No. 73, at 6; 73-1, at 5)).  They also argue that Mr. Walpole cannot be exempt from the statute because he was not practicing law in Maryland. (*Id.* at 21-23).

The MCPA expressly does not reach the conduct of either attorneys or insurance producers.  Md. Code Ann., Com. Law § 13-104(1) (2011).  Because Mr. Walpole is a title insurance producer, he is exempt from the MCPA.  Sections 10-101(i)(1) and (2) of the Insurance Article of the Maryland Code define "Title insurance producer" as someone who "for compensation, solicits, procures, or negotiates title insurance contracts" or a person who "provides escrow, closing, or settlement services that may result in the issuance of a title insurance contract."  Md. Code Ann., Ins. § 10-101(i)(1),(2).

Further, it is not clear that the statutory exemption would not apply to Mr. Walpole because he was not licensed to practice law in Maryland, as Plaintiffs argue.[1]   The statute itself does not provide this distinction with respect to the general category of "lawyers," but does restrict exemption only to "insurance compan[ies] authorized to do business in the State, [and] insurance producer[s] licensed by the State."   Md. Code Ann., Com. Law § 13-104(1) (2011).   The plain meaning of this statute indicates that the General Assembly did not intend to limit the statutory exemption for "lawyers" in the same way that it did "insurance companies" or "insurance providers."   *Id.*; *Dean v. U.S.*, 556 U.S. 568, 573 (2009) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting *Russello v. U.S.*, 464 U.S. 16, 23 (1983)); *see also Robinson v. Fountainhead Title Group*

---

[1] Plaintiffs also argue that if Mr. Walpole is exempt from the MCPA on the basis of his being an attorney, their negligence claim must be revived because this fact gives rise to a duty of care that Mr. Walpole owed Plaintiffs. (*See* ECF No. 73, at 35-36).   The statutory exemption, however, is not based on an attorney-client relationship, but on the attorney's status as an attorney.   As discussed here, it applies a broad exemption to the "professional services of a . . . lawyer."   Because there is no evidence that an attorney-client relationship existed between Plaintiffs and Mr. Walpole, the negligence claim will not be revived.

*Corp.*, 447 F.Supp.2d 478, 489-90 (D.Md. 2006) (holding that real estate brokers and title insurance producers not hired to act in that capacity are nonetheless exempt from the MCPA for conduct "concern[ing] the 'professional services' of Defendants").   Mr. Walpole "conducted the settlement, arranged the paperwork, signed the documents, disbursed the checks[,] and generally oversaw the refinancing."   (ECF No. 37, at 10).   These services are related to his professional services as a lawyer, and Mr. Walpole is therefore exempt from liability under this statute. In any event, Plaintiffs' argument is unavailing because Mr. Walpole, by Plaintiffs' own admission, is a title insurance provider, and also exempt from the statute on that basis.   Thus, Mr. Walpole's motion for summary judgment will be granted as to the MCPA claim.[2]

---

[2] Plaintiffs argue that Mr. Walpole's violation of a number of other statutes and regulations are evidence of his liability for "fraud and deceptive trade practices."   (ECF No. 73, at 23-29).   Because the MCPA proscribes "fraud and deceptive trade practices," this will be construed as an argument that Mr. Walpole violated the MCPA.   Because he is exempt from this statute, this argument carries no weight.   *See Joseph v. Bozzuto Mgmt. Co.*, 173 Md.App. 305, 321, 326 (2007) (noting that this principle is one that "is carefully circumscribed," and "[i]n Maryland, the violation of a statute does not constitute negligence per se.   Rather, the breach of a statutory duty may be considered some evidence of negligence where three requirements are met.   First, the plaintiff must be a member of the class of persons the statute was designed to protect. Second, the injury suffered must be of the type the statute was designed to prevent.   Third, the plaintiff must present legally

### 3.    Unjust Enrichment

In Maryland, unjust enrichment consists of three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value. *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007). "A successful unjust enrichment claim serves to 'deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses.'"  *Id.* at 295-96 (quoting *Dep't of Hous. & Cmty. Dev. v. Mullen*, 165 Md.App. 624, 659 (2005), *cert. denied*, 391 Md. 579 (2006)).

Defendant Walpole initially contended that Plaintiffs' unjust enrichment claim is defeated because a written contract exists between the parties.  *See Janusz v. Gilliam*, 404 Md. 524, 537 (Md. 2008) (holding that unjust enrichment claims "may not be brought where the subject matter of the claim is covered by an express contract between the parties.") (quoting *Cnty.*

---

sufficient evidence to demonstrate that the statutory violation
was the proximate cause of the injury sustained."). *Id.* at 326.

*Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96 (2000)). Mr. Walpole attached two documents as evidence of his written contracts with the Plaintiffs. (ECF Nos. 71-2 & 71-3). Plaintiffs pointed out that the two documents that Defendant submitted are not executed by either party, and therefore do not establish the existence of a contract. Recognizing the merit of Plaintiffs' argument, Mr. Walpole withdrew the argument in his Reply. (ECF No. 75, at 10-12).

As Mr. Walpole recognizes, this argument is flawed for a number of reasons. First, the "contracts" are Maryland Application Disclosure forms that lenders are required to provide to borrowers disclosing fees for settlement services. *See* Md. Code Ann., Com. Law § 12-119 and 12-120 (2011). Next, Mr. Walpole's name does not appear on either form. (ECF Nos. 71-2 & 71-3). Finally, the forms are not signed by either Plaintiffs or Mr. Walpole. These documents do not provide evidence that a contractual relationship exists between the parties.[3] Therefore, Plaintiffs' unjust enrichment claim will

---

[3] Plaintiffs argue that the existence of these contracts give rise to a duty of care that Mr. Walpole owed them. Thus, they seek to resuscitate their dismissed negligence claim. Because there is no evidence that such a contract exists, the negligence claim will not be revived. (*See* ECF No. 73, at 35-36).

12

not be defeated on this basis, requiring an examination of the
individual elements of the claim.

By not addressing them in his summary judgment motion, Mr.
Walpole concedes that the first two elements of an unjust
enrichment claim are met:  that Plaintiffs conferred a benefit
to him, and that he had knowledge and appreciation of that
benefit. *See Hill*, 402 Md. at 295.  Here, the unjust enrichment
Walpole allegedly incurred was a portion of the proceeds from
Plaintiffs' fraudulently induced cash-out refinancings,
including "amounts paid directly to Walpole" and "large cash
amounts to either Sadr and/or Walpole."[4]  (ECF No. 37, at 11).
Plaintiffs adduce evidence that, at a minimum, Mr. Walpole
received $10,000 per month and $100 per transaction to
facilitate the closing transactions between Plaintiffs and M.I.
Title and M.I. Financial. (ECF No. 73-1, at 26).  Mr. Walpole's
deposition testimony further reveals that he received this

---

[4] Plaintiffs did not waive their unjust enrichment claim in
their class certification reply brief.  (ECF No. 72, at 10 n.1)
(noting that the unjust enrichment claim is "so limited as to
preclude continued litigation").  Plaintiffs' opposition to
Defendant's summary judgment motion (ECF No. 73), however,
argues that the unjust enrichment claims should not be
dismissed.  "A plaintiff's failure to respond to a summary
judgment motion may constitute waiver or abandonment of a
claim." *Estate of Edgerton v. UPI Holdings, Inc.*, CCB-09-1825,
2011 WL 6837560, at *4 (D.Md. Dec. 28, 2011) (citing *Mentch v.
Eastern Sav. Bank, FSB*, 949 F.Supp. 1236, 1246-47 (D.Md. 1997)).
Because Plaintiffs respond to Defendant's unjust enrichment
arguments in their summary judgment opposition, this claim is
not waived.

compensation pursuant to his relationship with M.I. Financial as a 1099 independent contractor. (*Id.*). Mr. Walpole also testified to the fact that all of the transactions he facilitated and closed after January 2006 "were produced or steered toward M.I. Title," and that a portion of the refinancing proceeds were paid to M.I. Title and M.I. Financial. (*Id.* at 7, 15). He did not tell Plaintiffs of his ownership interest in M.I. Title, or of any money he received from Plaintiffs' refinancings as a result of that ownership. (*Id.* at 15-16). Taken together, this evidence supports Plaintiffs' claim that Mr. Walpole received a benefit from them as a result of these transactions. Mr. Walpole disputes only the amount of the benefit that Plaintiffs conferred, arguing that it is limited to $100 per transaction. (ECF No. 71, at 12).

Additionally, Mr. Walpole does not dispute his knowledge and acceptance of some benefit. *See Hill*, 402 Md. at 299 (noting that "[t]he essence of the requirement that the defendant have knowledge or appreciation of the benefit is that the defendant have an opportunity to decline the benefit."). Because Mr. Walpole was (1) responsible for the disbursement of funds from the refinancing; (2) had an ownership interest in, and drew a salary from, the entities receiving some of the funds from refinancing; and (3) does not dispute that he appreciated a benefit from Plaintiffs, it is reasonable to infer that Mr.

14

Walpole had the requisite knowledge of the benefit received by
him and had an opportunity to decline such benefit.

Mr. Walpole's final argument to defeat Plaintiffs' unjust
enrichment claim is that the balance of equities tilts in his
favor because "Plaintiffs chose to remain ignorant" of Ms.
Sadr's criminal scheme by "fail[ing] to ask any substantive
questions" in an effort "to evade their financial obligations to
lenders without fully repaying their loans." (ECF No. 71, at
11). This argument is without merit. "The final element of an
unjust enrichment claim is a fact-specific balancing of the
equities." *Hill*, 402 Md. at 301. When making this
determination in considering a motion for summary judgment, "a
reviewing court considers the facts in the record, and the
reasonable inferences drawn from those facts, in a light most
favorable to the non-moving party," in this case, Plaintiffs.
*Id.*

Plaintiffs assert the following facts to support their
argument that equity requires a finding of unjust enrichment:
Mr. Walpole has been practicing real estate law for 46 years; he
recognized that something was amiss with the nature of the
transactions after processing the first refinancing for Ms.
Sadr; he completed approximately 90 refinancing transactions for
Ms. Sadr at his office; Mr. Walpole had an undisclosed equity
interest in an entity receiving funds from the refinancings; the

people involved in these transactions closed and facilitated by Mr. Walpole had equity stripped from their homes.  Plaintiffs also assert that they were unsophisticated with respect to this type of transaction and believed in the legitimacy of the transaction, at least to some degree, based on the gravitas and professionalism that Mr. Walpole, as an attorney, brought to the table.  (ECF No. 73, at 11-19, 33-34).

At Linda Sadr's sentencing hearing, U.S. District Court Judge Liam O'Grady also commented on the merits of an argument similar to the one posed by Mr. Walpole here concerning these transactions.  Directing his comments to Plaintiffs and others, he remarked:

> [I]t was a sophisticated enterprise that [Ms. Sadr] was very good at.  And I don't think any of you should feel guilty about having been victims of this crime and having been convinced of it when you shouldn't have fallen prey to it because you're smarter than that.  This was a very clever scheme. . . . A scheme that really drew out people's interest, the bank being the bad guy. That is very attractive to most citizens in the community.  And so, you really should not feel deep down that you didn't carefully consider things that you should have and as a result you have suffered and your families have suffered. And I think that you just, unfortunately, fell prey to a sophisticated scheme.

*U.S. v. Sadr*, No. 1:10-cr-00437-LO (E.D.Va. June 17, 2011) (transcript of sentencing hearing, at 41).  Plaintiffs' and

Judge O'Grady's reasoning is persuasive, and the scales of equity do not tip in Mr. Walpole's favor.

Therefore, summary judgment will not be granted in Defendant's favor on Plaintiffs' unjust enrichment claim because there is a sufficient basis upon which a fact finder could determine that Plaintiffs conferred a benefit to Mr. Walpole, that he had knowledge and appreciation of that benefit, and the equities do not balance in Mr. Walpole's favor.

## III. Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendant Walpole will be granted as to Plaintiffs' MCPA claim and denied as to Plaintiffs' unjust enrichment claim. A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge