IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIE FIELDS, et al.,                  :

                                        :

     v.                                 :   Civil Action No. DKC 11-1000

                                        :

FORREST WALPOLE, ESQ., et al.           :

                                        :

### MEMORANDUM OPINION

Presently pending and ready for review in this mortgage fraud case is Plaintiffs' motion for class certification (ECF No. 47). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Plaintiffs' motion for class certification will be denied without prejudice.

## I.   Background

### A.   Factual Background

The following facts are either uncontroverted or considered in the light most favorable to Plaintiffs Willie Fields, Marcia Fields, Melvin Hamilton, and Renee Hamilton. Plaintiffs are individuals affected by an alleged "ponzi scheme" implemented by Defendants Linda Sadr, Forrest Walpole, Maximum Impact Title ("M.I. Title"), and Maximum Impact Financial Services ("M.I. Financial"). This scheme is described in detail in the Memorandum Opinion of July 6, 2011, resolving Defendant Walpole's motion to dismiss. (ECF No. 22).

Defendant Forrest Walpole operates a law practice in Virginia, was a minority owner of Defendant M.I. Title and was "the attorney who conducted the refinance that helped fund the equity stripping 'ponzi' scheme." (ECF Nos. 2 & 37, at 6). Defendants M.I. Title and M.I. Financial were business entities run by Defendant Linda Sadr, created to further "the improper transactions at issue in this case." (*Id.*, at 3)). In brief, the transactions worked as follows: individuals such as Plaintiffs would refinance their homes and give the cash-out proceeds from refinancing to M.I. Title and M.I. Financial. These entities, Ms. Sadr promised, would place the funds in escrow and pay each individual's mortgage for eighteen months, after which the mortgages would be paid off in full. (*Id.*, at 3). During this period, Ms. Sadr would file a strategic lawsuit challenging a "'loophole' that mortgage companies used to 'get paid twice,'" and ultimately have the court set aside Plaintiffs' mortgages. (*Id.*, at 2-3). Despite Sadr's representations, there was no "loophole" to exploit, Ms. Sadr did not pay off Plaintiffs' mortgages, and their properties eventually went into foreclosure.

Mr. Walpole formed M.I. Title in April 2005 to facilitate loan settlements for Ms. Sadr. (ECF No. 73-1, at 4). Mr. Walpole and Ms. Sadr had a 50/50 ownership interest in the company. (*Id.*). Mr. Walpole also became a licensed title

insurance agent in Maryland to facilitate refinancings in this state. (*Id.* at 5). In January 2006, Mr. Walpole surrendered 49% of his ownership in M.I. Title to Ms. Sadr, retaining a 1% equity interest. (*Id.*). Mr. Walpole held no ownership stake in M.I. Financial. (*Id.* at 6). He later surrendered his remaining equity in M.I. Title. (*Id.* at 21).

Beginning in January 2006, M.I. Financial paid Mr. Walpole $10,000 per month as an independent contractor to facilitate mortgage refinances during the relevant time period, and issued him 1099 tax forms. (ECF No. 73-1, at 26). Individuals pursuing refinances, including Plaintiffs, also paid him $100 per transaction. (*Id.*). All of the transactions were "produced or steered toward M.I. Title," and portions of Plaintiffs' refinancing proceeds were paid to M.I. Title and M.I. Financial. (*Id.* at 7, 15). Mr. Walpole never told Plaintiffs of his ownership interest in M.I. Title or of any additional money he received from M.I. Financial as a result of the transactions. (*Id.* at 15-16).

### B.   Procedural Background

Plaintiffs initially brought suit as a class action in the Circuit Court for Prince George's County, Maryland. On March 12, 2011, Plaintiffs served the summons and complaint on Walpole, and on April 7, 2011, they served the remaining Defendants M.I. Title and M.I. Financial. On April 18, the case

was removed to this court on the basis of diversity of citizenship. (ECF No. 1). The complaint contains six counts: negligence; violation of the Maryland Consumer Protection Act ("MCPA"); unjust enrichment; negligent misrepresentation; fraud; and violation of the Maryland Finder's Fee Act. (ECF No. 2). When M.I. Title and M.I. Financial failed to respond within the requisite time period, Plaintiffs moved for entry of default. (ECF Nos. 17, 18). The clerk entered default against those Defendants as to the original complaint on June 28, 2011. (ECF No. 19).

Separately, on April 25, 2011, Walpole moved to dismiss all counts against him for failure to state a claim. (ECF No. 11). On July 6, 2011, in a memorandum opinion and order, this court dismissed four of the six counts against Walpole, leaving the unjust enrichment and MCPA claims. (ECF Nos. 22, 23). Walpole subsequently filed an answer on July 12, 2011. (ECF No. 24). Plaintiffs requested leave to file an amended complaint on October 28, 2011 to add Linda Sadr as a Defendant (ECF No. 30), and that motion was granted in part on December 13, 2011 (ECF Nos. 35, 36). Plaintiffs filed an amended complaint that same day. (ECF No. 37).[1] Ten days later, Defendant Walpole filed an

---

[1] The factual allegations with respect to M.I. Title and M.I. Financial are identical between the amended complaint and

answer to the complaint and a crossclaim against Ms. Sadr. (ECF Nos. 38, 39). On February 6, 2012, Plaintiffs filed the pending motion to certify a class. (ECF No. 47). The next day, Defendant Walpole provided notice that he filed Chapter 7 Bankruptcy on February 3, 2012. (ECF No. 48). Default was entered against Defendant Sadr as to the amended complaint on March 6, 2012. (ECF No. 60). Due to Mr. Walpole's bankruptcy, the case was administratively closed. (ECF No. 61). The case was reopened on June 20, 2012, because the bankruptcy court lifted the stay for the limited purpose of allowing Plaintiffs to pursue the proceeds of Mr. Walpole's professional liability insurance policy. (ECF No. 67). Mr. Walpole filed for summary judgment on the remaining claims against him, and summary judgment was entered in his favor on the MCPA claim. (ECF Nos. 76, 77).

## II. Analysis

Plaintiffs filed a motion seeking class certification against all Defendants pursuant to Federal Rule of Civil Procedure 23, requesting that they be certified as representatives of a class comprising all people whose mortgages were refinanced by M.I. Title, LLC in a transaction conducted by Defendant Walpole, and for which proceeds were directed to both

---

the original complaint (ECF No. 2), on which these Defendants defaulted.

M.I. Title and M.I. Financial.   (ECF No. 47, at 1, 7-8).   Only the unjust enrichment claim remains against Defendant Walpole, for which a class could possibly be certified against him.   (ECF Nos. 76, 77).

Because Defendants Sadr, M.I. Title, and M.I. Financial are all in default, Plaintiffs' factual allegations against them are accepted as true.   *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008) ("'The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'") (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). When a Defendant defaults, "[t]he defendant is not held . . . to admit conclusions of law." *Ryan*, 253 F.3d at 780.   Rather, "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover . . . The court must, therefore, determine whether the well-pleaded allegations in [Plaintiffs'] complaint support the relief sought in this action." *Id.* (internal quotations and citations omitted).

A.   **Sufficiency of Complaint under Fed.R.Civ.P. 12(b)(6)**

Because the facts set forth in Plaintiffs' complaint are deemed admitted by default, a class will only be considered for certification on those claims for which relief can be granted

6

pursuant to the standard of Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Fosberry v. Coyle Business Products, Inc.*, No. 10-00799, 2012 WL 1532750, at *3 (D.S.C. April 2, 2012). Thus, the sufficiency of each count asserted against the defaulting Defendants must be assessed before the motion for class certification is considered.

### 1. Standard of Review

Rule 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3, (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir.

1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).   The court need not, however, accept unsupported legal allegations.   *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1979).   Nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'"   *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).   Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Id.*

## 2.   Negligence & Negligent Misrepresentation

For Plaintiffs to state a cause of action as to their claims for negligence and negligent misrepresentation (Counts 1 and IV)[2] they must establish that Defendants owed a duty to the

---

[2] The complaint labels the Defendants' alleged violation of the Maryland Consumer Protection Act as a duplicate "Count I."

Plaintiffs.    *Silver Hill Station Ltd. P'ship v. HAS/Wexford Bancgroup, LLC*, 158 F.Supp.2d 631, 636 (D.Md. 2001); *see also Jacques v. First Nat'l Bank of Md.*, 307 Md. 527 (1986) (negligence); *Parker v. Columbia Bank*, 91 Md.App. 346 (1992) (negligent misrepresentation).

A duty in tort will only be imposed if the nature of the relationship and transaction between the parties so dictate.  In the context of negligence and negligent misrepresentation, Maryland courts hold that "where the failure to exercise due care creates a risk of economic loss only, an intimate nexus between the parties [i]s a condition to the imposition of tort liability."  *Superior Bank, F.S.B. v. Tandem Nat. Mortg., Inc.*, 197 F.Supp.2d 298, 320 (D.Md. 2000) (citing *Jacques*, 307 Md. at 534) (internal quotations omitted).  Such an intimate nexus requires "contractual privity or its equivalent," and will turn on the closeness of the parties' relationship.  *Id.; see also Tischler v. Baltimore Bancorp*, 801 F.Supp. 1493, 1504 (D.Md. 1992) (noting that "an 'intimate nexus' cannot exist unless a defendant is aware of a specific party or class of parties which intend to rely upon the defendant's statement") (quoting *Brickman v. Tyco Toys*, Inc., 722 F.Supp. 1054, 1062 (S.D.N.Y. 1989)).  Tort liability does not arise automatically, however,

---

This memorandum opinion refers to that count to as "Count II" and the subsequent counts are adjusted accordingly.

simply because a contract exists between two parties. *Silver Hill Station, Ltd. P'ship*, 158 F.Supp.2d at 636-40; *Jones v. Hyatt Ins. Agency, Inc.*, 356 Md. 639, 654 (1999) (noting that "contractual obligation, by itself, does not create a tort duty. Instead, the duty giving rise to a tort action must have some independent basis.") (quoting *Mesmer v. Md. Auto. Ins. Fund*, 353 Md. 241, 253 (1999)); *see also Jacques*, 307 Md. at 534, ("Nor does a duty assumed or implied in contract by that fact alone become a tort duty.").

In *Jacques v. First National Bank of Maryland*, the Maryland Court of Appeals discussed the context in which, under Maryland law, a tort duty in negligence may arrive when only a contractual relationship exists between the parties. 307 Md. 527 (1986). In *Jacques*, the plaintiffs entered into a contract with their bank to receive a mortgage on their home at a set interest rate. *Id.* at 529. The purchase contract required that the Jacques proceed to settlement, regardless of the loan amount that they were approved for, or forfeit their $10,000 deposit. *Id.* at 529-30. The bank agreed to decide what amount it would lend to the Jacques at the pre-determined rate. *Id.* at 529. Once the bank finished its review, it determined that the Jacques qualified for only $41,400 at the pre-set rate. *Id. at 530.* They needed a loan of $112,000 to purchase their home, and thus required additional financing. *Id.* During the month that

the Bank was processing the Jacques' loan application, interest rates increased dramatically, and the ultimate cost of the Jacques' home spiked. *Id.* The Jacques argued that they were entitled to a larger loan at the pre-determined interest rate. *Id.* The Maryland Court of Appeals affirmed that the bank breached its duty to exercise reasonable care when it processed the Jacques loan application. *Id.* at 544-45.

Interpreting the tort duty imposed in *Jacques*, subsequent courts have emphasized the "special circumstances" existing between the borrower, lender, and broker. *Silver Hill Station, Ltd. P'ship*, 158 F.Supp.2d at 636-40. In contrast to loan contracts between sophisticated commercial lenders and borrowers, a duty of care is owed to a home-loan borrower when "extraordinary provisions [are] contained in the real estate sales contract . . . [that leave] the [Plaintiffs] particularly vulnerable and dependent upon the [Defendant's] exercise of due care," and public policy dictates the imposition of "a special duty of care upon professionals who hold themselves out to the general public as possessing special skill to solve complex problems" because Plaintiffs are "unrepresented lay persons seeking a home mortgage from their local bank." *G&M Oil Co. v. Glenfed Fin. Corp.*, 782 F.Supp. 1078, 1083-84 (D.Md. 1989); *see also Howard Oaks Inc. v. Md. Nat'l Bank*, 810 F.Supp. 674, 677-78 (D.Md 1993) (dismissing a claim for negligent processing of a

loan because lender owed borrower no duty of care because there existed no "extraordinary circumstances (such as those in *Jacques* involving purchase of a personal residence). Rather, this was merely a commercial financing arrangement between a bank and its sophisticated business customer, in which no *Jacques* duty inhered.")

The facts alleged by Plaintiffs demonstrate that Linda Sadr owed Plaintiffs a duty of care with respect to her handling of the loan transactions because an "intimate nexus" existed between them, and the circumstances surrounding the transactions, which are analogous to those in *Jacques*, so dictate. Plaintiffs' second amended complaint alleges numerous facts to demonstrate privity of contract between themselves and Ms. Sadr. "A contract is an agreement which creates an obligation, and such an agreement may be defined as the concurrence of two or more persons in a common intent to affect their legal relations. A manifestation of mutual assent by the parties to a contract is essential to its formation." *Post v. Gillespie*, 219 Md. 378, 384 (1959) (internal quotation marks and citations omitted). The parties exchanged promises that affected their legal relationship to one another, and Plaintiffs were in privity of contract with Ms. Sadr because they refinanced their homes and gave Ms. Sadr all proceeds of the

transaction in exchange for her promise to eliminate their mortgage.

This contractual relationship further evinces the "intimate nexus" required by *Jacques* to impose a tort duty.  Ms. Sadr solicited Plaintiffs' participation in her "program" by meeting with them at their churches and neighborhood libraries.  She ushered them through every step of the refinancing process, from paperwork and application submission to cash-out allocation after closing.  Ms. Sadr helped file lawsuits on Plaintiffs' behalf, and advised them as their homes were foreclosed upon. She counseled Plaintiffs as they sought to renegotiate payment terms with their lenders.  Ms. Sadr was no stranger to the Plaintiffs or their refinancing transactions.  *See Jacques*, 307 Md. at 537.

A tort duty will be imposed on Ms. Sadr not simply on the basis of the parties' close relationship, but also because the magnitude of risk to Plaintiffs inherent in the transactions was high, and the circumstances require it.  *See Jacques*, 307 Md. at 537-41.  Plaintiffs' situation shares many similarities with the extraordinary circumstances that led the Maryland Court of Appeals to impose a tort duty on the defendant bank in *Jacques*. Like the Jacques, Plaintiffs are all unrepresented laypeople engaged in complicated home financing transactions.  Ms. Sadr held herself out as a professional with real estate finance and

13

legal expertise.   Plaintiffs were in a vulnerable position and were dependent on Ms. Sadr to exercise due care with respect to handling their loans.

Plaintiffs have little difficulty alleging the remaining elements of negligence as to Ms. Sadr:

> The elements of negligence are well-established and require a plaintiff to assert in the complaint the following: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty."

*Chicago Title Ins. Co. v. Allfirst Bank*, 394 Md. 270, 290-91 (2006) (internal quotations and citations omitted).   Plaintiffs must allege that Ms. Sadr failed to exercise that degree of care that a reasonably prudent mortgage broker and financial planner would have exercised under the same or similar circumstances. At a minimum, this includes not diverting the proceeds of Plaintiffs' home refinancings to her own pocket.   In so doing, Plaintiffs successfully allege that she breached the duty of care she owed Plaintiffs.   Plaintiffs' lost homes and increased mortgage payments are injuries suffered as a direct result of Ms. Sadr's misdeeds.   Therefore, Plaintiffs have met their burden at this initial stage to maintain a claim of negligence against Ms. Sadr.

14

To establish a claim for negligent misrepresentation, Plaintiffs must show that:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 337 (1982). Plaintiffs' complaint sufficiently pleads all elements of negligent misrepresentation as to Ms. Sadr.  According to Plaintiffs, Ms. Sadr's statements to Plaintiffs that her scheme would pay off their mortgages were false, and she intended to induce Plaintiffs to act on those promises.  Her prior success inducing others into her Ponzi scheme gave Ms. Sadr the knowledge that Plaintiffs would likely rely on her false promises, and that reliance would harm the Plaintiffs by causing them to increase their mortgage payments, lose equity in their homes, and possibly be forced out of their homes.  Plaintiffs' reliance on Ms. Sadr's promises was justifiable.  Plaintiffs had a great deal of equity in their homes and were duped into believing that they could exploit the legal system to pay off their mortgages within two years.  This reliance caused

Plaintiffs significant damage.  Therefore, Plaintiffs' complaint is sufficient to maintain a claim of negligent misrepresentation against Ms. Sadr.

By contrast, the only facts that Plaintiffs allege regarding Defendants M.I. Title and M.I. Financial are that they: (1) "were . . . entities created for the sole purpose of continuing the improper transactions at issue in this case;" (2) were owned by Mr. Walpole and Ms. Sadr; (3) M.I. Title was the "named title agent" for the transactions; and (4) M.I. Financial received some amount of proceeds from the transactions. (ECF No. 2, at 3, 10-11).  Because these facts to not demonstrate an intimate nexus between these Defendants and the Plaintiffs, no duty is owed, and the claims of negligence and negligent misrepresentation will be dismissed as to M.I. Title and M.I. Financial.

### 3.   Fraud

Count V of the complaint alleges fraud.  In Maryland, the elements of fraud are:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff

> suffered a compensable injury resulting from
> the misrepresentation.

*Md. Envtl. Trust v. Gaynor*, 370 Md. 89, 97 (2002). Claims of fraud are subject to a heightened pleading standard under Fed.R.Civ.P. 9(b). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999). Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The word "circumstances" "is interpreted to include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B.*, 197 F.Supp.2d at 313-14 (quoting *Windsor Assocs. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)). The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim, protect the defendant against frivolous suits, eliminate fraud actions where all of the facts are learned only after discovery, and safeguard the defendant's reputation. *Harrison*, 176 F.3d at 784. In keeping with these objectives, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which

she will have to prepare a defense at trial and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Id.*

As discussed above, Plaintiffs allege that Ms. Sadr knowingly made false representations to the Plaintiffs, on which they relied to their detriment.  From the allegations contained in Plaintiffs' complaint, it is clear that Ms. Sadr intended to defraud Plaintiffs of their home equity.  They aver that she actively deceived Plaintiffs with her claims of quick loan repayment and legal loopholes.  She did not pay Plaintiffs' mortgages as promised but instead deceived them by taking their money and leaving many homeless.  Therefore, Plaintiffs adequately plead a claim of fraud.[3]

### 4.  Unjust Enrichment

In Maryland, unjust enrichment consists of three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.  *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295

---

[3] Because Plaintiffs do not allege that M.I. Title or M.I Financial actively concealed, or failed to disclose any material fact in order to refinance their properties, their fraud claim against these entities will be dismissed.

(2007).   "A  successful  unjust  enrichment  claim  serves  to
'deprive  the  defendant  of  benefits  that  in  equity  and  good
conscience  he  ought  not  to  keep,  even  though  he  may  have
received  those  benefits  quite  honestly  in  the  first  instance,
and  even  though  the  plaintiff  may  have  suffered  no  demonstrable
losses.'"   Id. at 295-96 (quoting *Dep't of Hous. & Cmty. Dev. v.
Mullen*, 165 Md.App. 624, 659 (2005), *cert. denied*, 391 Md. 579
(2006)).

Plaintiffs  have  sufficiently  plead  facts  to  maintain  their
unjust  enrichment  claim  (Count  III)  against  Ms.  Sadr,  M.I.
Title,  and  M.I. Financial.   By  refinancing  their  mortgages  with
these  Defendants,  Plaintiffs  conferred  a  benefit  to  them.   As
the  parties  that  induced,  performed,  and  received  proceeds  from
the  refinancing  transactions,  Defendants  knew  that  Plaintiffs
were  entrusting  them  with  large  sums  of  money.   Finally,
Plaintiffs'  complaint  alleges  that  rather  than  repay  their
mortgages,  Defendants  kept  the  proceeds  from  the  transactions.
Taken  as  true,  these  allegations  support  the  claim  that
Defendants  were  unjustly  enriched  by  Plaintiffs  as  a  result  of
refinancing their home mortgages.

### 5.   Maryland Consumer Protection Act

Count  II  of  the  complaint  alleges  a  violation  of  the
Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-
101 *et seq.* (2011) ("MCPA").   "The [MCPA], codified at Maryland

19

Code (1975, 2005 Replacement Volume) §§ 13-101 *et seq.* of the Commercial Law Article was intended to provide minimum standards for the protection of consumers in [Maryland]." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 140 (2007).   In this case, Plaintiffs allege that the Defendants violated the MCPA through false representations and omissions relating to the validity of the mortgage payoff program and their refinancings. (ECF No. 37, at 14-15).

The MCPA proscribes, *inter alia*, deceptive and unfair trade practices in the "sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services" and the "extension of consumer credit."  Md. Code Ann., Com. Law § 13-303 (2011).   The MCPA specifically defines a mortgage as a "mortgage, deed of trust, security agreement, or other lien on 1 to 4 family residential real estate" and sets forth various requirements imposed on mortgage servicers.   *Id.* § 13-316. Maryland courts have also consistently recognized that the MCPA may be applied to transactions involving mortgages.  *See Bednar v. Provident Bank of Md.*, 402 Md. 532 (2007) (affirming lower court's application of the MCPA to fees charged in conjunction with a second mortgage); *Miller v. Pacific Shore Funding*, 224 F.Supp.2d 977, 988 (D.Md. 2002) (analyzing whether non disclosure regarding a secondary mortgage was suppression of a material fact as proscribed by the MCPA).  Plaintiffs describe a

number of false statements and omissions made by Defendants. Thus, it is clear that the MCPA does apply to deceptive and unfair trade practices regarding mortgages, and Plaintiffs sufficiently allege that Defendants deceived them while handing their refinancings.  Count II will not be dismissed as to Ms. Sadr, M.I. Title, and M.I. Financial at this time.

**6.   Maryland Finder's Fee Act**

Count V of the complaint alleges a violation of the Maryland Finder's Fee Act, Md. Code. Ann., Com. Law §§ 12-801 *et seq.* (West 2011) ("Finder's Fee Act").  According to Plaintiffs, Defendants violated the Finder's Fee Act because they did not "disclose in a separate document the finder's fees charged as part of the refinance and/or any relationship between the broker and the lender[.]"  (ECF No. 37, at 20).

"The Maryland Finder's Fee Law is very narrow in its scope: it applies only to mortgage brokers and the fees they charge borrowers."  *Sweeney v. Savings First Mortg., LLC*, 388 Md. 319, 340 (2005).  Under the act, a mortgage broker is a person who, for a fee or other valuable consideration assists a borrower in obtaining a mortgage loan and is not named as a lender in the transaction.  Md. Code Ann., Com. Law § 12-801(f)(2011).

Here, Plaintiffs allege facts supporting an inference that Sadr acted as their mortgage broker.  Plaintiffs allege that Sadr helped them at every stage of the refinancing process to

21

obtain a mortgage on their property.  Additionally, they do not assert that Ms. Sadr is listed as a lender in the transaction. Plaintiffs allege that M.I. Title was the title agent for the transaction, and that M.I. Financial received proceeds of the refinancing.  Therefore, the Finder's Fee Act is applicable as to Sadr, but not M.I. Title or M.I. Financial, because Ms. Sadr was Plaintiffs' mortgage broker, and Plaintiffs allege that she did not disclose the finder's fee associated with their transactions.

### B.   Class Certification

The Fourth Circuit has held that "although a default judgment has the effect of deeming all factual allegations in the complaint admitted, it does not also have the effect of admitting the independent legal question of class certification." *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (internal quotations omitted); *see also Davis v. Hutchins*, 321 F.3d 641, 648-49 (7th Cir. 2003) (holding that district courts must determine whether class certification is appropriate even when a defendant has defaulted).  In order for Plaintiffs to bring a class action, Plaintiffs must meet all four requirements of Fed. R. Civ. P. 23(a) and at least one of the requirements of Fed. R. Civ. P. 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).  The burden of establishing class status is on

Plaintiffs, *Bullock v. Bd. of Educ. of Montgomery Cnty.*, 210 F.R.D. 556, 558 (D.Md. 2002), and "[t]he court has a duty to undertake a 'rigorous analysis'" to ensure that the requirements of class certification have been met, *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 215 (D.Md. 1997) (citing *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982)).   The district court has discretion in determining whether to certify a class, and such a determination will be reviewed only for an abuse of that discretion. *Boley v. Brown*, 10 F.3d 218, 223 (4th Cir. 1993).

After considering the adequacy of the second amended complaint, each Defendant's potential liability is widely varied under the many remaining claims.   Given that a number of those claims have been dismissed as to some Defendants, but not as to others, this case stands in a very different posture with respect to the issues of typicality, commonality, and adequacy of the class; predominance of individual issues as to specific defendants; and the superiority of class-action litigation than it did when Plaintiffs filed the motion for class certification. Since it is extremely difficult to determine these issues and adequately sub-divide the class across issues and parties, Plaintiffs have not currently met their burden under Rule 23. Plaintiffs' motion for class certification will be denied without prejudice to the Plaintiffs' right to file a motion to

certify a class or classes in light of this memorandum opinion.[4]
If Plaintiffs believe that class certification is still
appropriate, they may renew their motion accordingly, submitting
a new recommendation of how the class should be defined in a
more focused way with respect to the remaining issues and
parties.[5]

## III. Conclusion

For the foregoing reasons, the motion to certify a class
filed by Plaintiffs will be denied without prejudice.    A
separate order will follow.

                                          /s/
                             _____
                             DEBORAH K. CHASANOW
                             United States District Judge

_____

[4] Because the motion for class certification is being denied
without prejudice, the parties' arguments for and against
certification at this stage will not be considered.    *In re
Prudential Ins. Co. of Am. SGLI/VGLI Contract Litigation*, No.
11-md-02208-MAP, 2012 WL 3574354, at *3 n.2 (D.Mass. Aug. 20,
2012).

[5] Defendant Walpole challenges Plaintiffs' motion for class
certification on the ground that he is prejudiced by the timing
of the motion.   Mr. Walpole cites *Kleindienst v. McCarthy*, 741
F.2d 1406 (DC Cir. 1984) to support this position.    In *McCarthy*,
the case had been pending for more than three years at the time
plaintiffs sought certification, and Defendants did not know
whether they faced 39 or more than 7,000 plaintiffs.   This case
is clearly distinguishable, because as based on Plaintiffs'
complaint and his own files, Mr. Walpole has been aware of the
limited pool of possible plaintiffs.    Further, the case was
pending for less than 10 months at the time Plaintiffs sought
class certification, and the delay was due at least in part to
Mr. Walpole's pending bankruptcy.   Ultimately, this argument is
not dispositive of the class certification issue, and
Plaintiffs' claims are not currently suitable for resolution on
a classwide basis for the reasons discussed above.