IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIE FIELDS, et al.,

    v.     :     Civil Action No. DKC 11-1000

FORREST WALPOLE, ESQ., et al.

**MEMORANDUM OPINION**

I. **Background**

Plaintiffs claim they are the victims of an alleged "ponzi scheme" implemented by Defendants Linda Sadr, Forrest Walpole, Maximum Impact Title ("M.I. Title"), and Maximum Impact Financial Services ("M.I. Financial"). The background facts are set out in further detail in the Memorandum Opinion of July 6, 2011, resolving Defendant Walpole's motion to dismiss. (ECF No. 22).

In their original and amended complaints, Plaintiffs Melvin and Renee Hamilton, Marcia and Willie Fields, and Carlton Powell brought six claims against Defendants Linda Sadr, M.I. Title, and M.I. Financial. (ECF Nos. 2 & 47). When M.I. Title and M.I. Financial failed to respond to the original complaint within the requisite time period, Plaintiffs moved for entry of default. (ECF Nos. 17 & 18). The clerk entered default against those Defendants as to the original complaint on June 28, 2011.

(ECF No. 19). Plaintiffs filed an amended complaint that included Linda Sadr as a Defendant. When Ms. Sadr failed to respond, default was entered against her on March 6, 2012. (ECF No. 60).

In a Memorandum Opinion filed September 12, 2012, the viability of the claims against the defaulted defendants were discussed and all claims against Defendant Sadr remain: negligence (Count I), violation of the Maryland Consumer Protection Act ("MCPA") (Count II), unjust enrichment (Count III), negligent misrepresentation (Count IV), fraud (Count V), and violation of the Maryland Finder's Fee Act (Count VI). Against the entities, only claims of unjust enrichment and violation of the MCPA remain.[1] All claims against Mr. Walpole were ultimately dismissed by agreement. (ECF Nos. 88 & 89).

During a teleconference on November 27, 2012, Plaintiffs requested a bench trial to enter judgment against the defaulted Defendants. On April 22, 2013, Plaintiffs filed a proposed pretrial order memorializing this request and outlining the damages they sought and the evidence they intended to introduce to support those claims. (ECF No. 90). A bench trial on damages was held on May 13, 2013.

---

[1] The opinion noted that Counts I, IV, V, and VI against Maximum Impact Title and Maximum Impact Financial would be dismissed. They will therefore be dismissed in the order accompanying this opinion.

2

## II. Standard of Review

Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Where a default has been previously entered by the clerk and the complaint does not specify a certain amount of damages, the court may enter a default judgment upon the plaintiff's application and notice to the defaulting party, pursuant to Fed. R.Civ.P. 55(b)(2). A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001).

"Upon [entry of] default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not." *Lawbaugh*, 359 F.Supp.2d at 422. Federal Rule of Civil Procedure 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. "[C]ourts have generally held that a default judgment cannot award additional damages . . . because the defendant could not

3

reasonably have expected that his damages would exceed that amount." *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (citing *S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

**III. Analysis**

The finding of liability on Plaintiffs' claims of negligence, negligent misrepresentation, fraud, unjust enrichment, and violations of the MCPA allow them to recover the equity that they lost in the refinancing of their mortgages as compensatory economic damages. Plaintiffs also seeks to recover non-economic pain and suffering damages from Ms. Sadr on their tort claims. Plaintiffs presented no evidence of fees charged by Ms. Sadr to act as their mortgage broker. Therefore they cannot recover damages for violations of the Finder's Fee Act. Ms. Sadr, M.I. Title, and M.I. Financial are jointly and severally liable for damages resulting from Plaintiffs' claims of unjust enrichment and violations of the MCPA.

Compensatory economic damages sought under the various claims largely overlap, seeking recovery for the equity lost by participating in Defendants' scheme. The "one wrong, one

4

recovery" rule precludes a party from recovering twice for one injury. *United States v. Rachel*, 289 F.Supp.2d 688, 697 (D.Md. 2003).

**A.   Economic Damages**

Plaintiffs seek economic damages in amounts equivalent to the equity they lost when they refinanced their homes pursuant to Defendants' scheme.  To support this request, they submit documentary evidence of their home refinancing transactions, including the HUD-1 settlement statement from the closing that outlines the settlement figures.  At the bottom of each HUD-1 statement, the forms list a "Cash to Borrower" amount that represents the proceeds of the refinancing of Plaintiffs' mortgages.  These sums were:  for the Hamiltons, $135,856.32; for the Fields, $97,142.90; and for Mr. Powell, $143,393.18. (Pls. Exs. 1, 6, 11).  Plaintiffs also produced evidence showing that they did receive some small portion of these proceeds: $300 for the Hamiltons; $5,770.84 for the Fields; and $6,684.62 for Mr. Powell.  (Pls. Exs. 2, 8, 12).  The difference between these amounts is the total compensatory economic damages that each Plaintiff seeks:  $135,556.32 for the Hamiltons; $91,372.06 for the Fields; and $136,708.56 for Mr. Powell.  (ECF No. 90, at 2-3).

"To recover compensatory damages, the amount must be proved with reasonable certainty and may not be based upon speculation

or conjecture." *Brock Bridge Ltd. P'ship v. Dev. Facilitators, Inc.*, 114 Md.App. 144, 157 (1997). Plaintiffs' HUD-1 documents and additional evidence showing the amounts that they received from the refinancing of their mortgages support their claims that they suffered economic loss in the amounts that they seek.

### B. Pre-judgment Interest

Additionally, Plaintiffs seek pre-judgment interest on these damages. In a case based on diversity jurisdiction, pre-judgment interest is a matter of state law. *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999). Under Maryland law, pre-judgment interest is allowable when:

> the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date.

*First Va. Bank v. Settles*, 322 Md. 555, 564 (1991). Pre-judgment interest shall be calculated at the legal rate of six percent *per annum*. Md. Const. Art. III, § 57 ("The Legal Rate of Interest shall be Six per cent. *per annum*; unless otherwise provided by the General Assembly.").

Here, Plaintiffs are entitled to pre-judgment interest because their compensatory damages were fixed as of the date of closing. Such interest is calculated from the date of the closing of Plaintiffs' refinance until the entry of judgment.

The Hamiltons closed their refinance on January 12, 2006; the Fields on October 20, 2006; and Mr. Powell on May 25, 2006. (Pls. Exs. 1, 6, 11). Accordingly, the Hamiltons are entitled to $59,741.34 in pre-judgment interest; the Fields, $36,048.16; and Mr. Powell, $57,260.29.

### C. Non-Economic Damages

Plaintiffs also seek non-economic damages for emotional distress. Generally, they assert that Defendants' fraud caused them stress that manifested itself in a variety of ways, including headaches, increased blood pressure, and sleeplessness. At the hearing on May 13, 2013, Mr. Hamilton testified that at the time he realized that his home would enter foreclosure, in 2008, he began experiencing paranoia and sleeplessness. He also observed his wife's sleeplessness and headaches. The Hamiltons also testified to the extreme social isolation caused by the scheme. They were forced to move multiple times, always into smaller homes and apartments; they lived out of boxes for fear of foreclosure. Once they realized their home would go into foreclosure, they never had social guests at their home, and they constantly lied to friends and family to prevent them from seeing their deteriorating living situation.

Ms. Fields testified that she was not sleeping and visited her doctor because she was afraid that she was exhibiting signs

7

of Alzheimer's disease. Her doctor attributed her memory loss to stress. Mr. Fields also noted experiencing headaches and sleeplessness. Both Mr. and Ms. Fields attributed the dissolution of their marriage to the stress they endured at this time. Finally, Mr. Powell noted that his blood pressure rose considerably, and that he was required to increase his dosage of blood pressure medicine. He also noted that he experienced headaches from the stress associated with trying to save his home from foreclosure. He worked all overtime that he could get to generate extra income to help pay his inflated mortgage bill. Mr. Powell testified that relationships with his friends and family have deteriorated because he works too much to see them. All of the Plaintiffs testified that they had not had any of these problems before they experienced the stress of the financial hardship caused by Defendants' fraud.

Maryland permits "recovery of damages for emotional distress if there was at least a consequential physical injury," in the sense that "'the injury for which recovery is sought is capable of objective determination.'" *Hoffman v. Stamper*, 385 Md. 1, 34 (2005) (quoting *Vance v. Vance*, 286 Md. 490, 498 (1979)). This physical manifestation requirement allows recovery for "such things as depression, inability to work or perform routine household chores, loss of appetite, insomnia, nightmares, loss of weight, extreme nervousness and

irritability, withdrawal from socialization, fainting, chest pains, headaches, and upset stomachs," *id.* at 34–35, but does not permit recovery "based on the plaintiff simply saying, 'This made me feel bad; this upset me,'" *id.* at 34.

Three principles govern the determination of whether a physical injury is capable of objective determination:

> First, . . . the evidence must contain more than mere conclusory statements, such as "He was afraid," . . . . The evidence must be detailed enough to give the jury a basis upon which to quantify the injury. Second, a claim of emotional injury is less likely to succeed if the victim is the sole source of all evidence of emotional injury . . . There is no reason why the victim's own testimony may not be sufficient, as long as it otherwise provides the jury with enough information to render his or her injuries capable of objective determination. Third, although minor emotional injuries may be less likely to produce the kind of evidence that renders an injury capable of objective determination, that does not mean that an emotional injury must reach a certain threshold level of severity before it becomes compensable. There is no severity prong of the *Vance* test. Our focus thus is properly on the evidence of mental anguish produced.

*Exxon Mobil Corp. v. Albright*, --- Md. ---, 2013 WL 673738, at *17 (Feb. 26, 2013) (quoting *Hunt v. Mercy Med. Ctr.*, 121 Md. App. 516, 531 (1998)). In the context of physical injuries arising from stress related to mortgage fraud, the Maryland Court of Appeals has indicated that a plaintiff's testimony that "whenever he began thinking about his problems, he would get

9

headaches and would vomit" could be sufficient to show an objectively ascertainable consequential physical injury from the fraud. *Hoffman*, 385 Md. at 33–38.

Likewise here, Plaintiffs' testimony reflected that all suffered headaches, sleepless nights, social isolation, and anxiety; understandably so. Thus, although Plaintiffs' testimony was the sole source of evidence of their injuries, and no amount of money can truly compensate them for their trials, damages for emotional distress are appropriate. Each person suffered stress for many months as they faced the loss of their homes. Damages of pain and suffering will be awarded to each Plaintiff in the amount of $25,000.

## IV. Conclusion

A separate Judgment will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge